# EDGAR B. MOORE *vs.* JOHN W. PUTTS.

*Duress or Undue Influence—Contract Obtained by Threat to Destroy Property.*

A contract is voidable, whether under seal or not, when the promisor was induced to execute it by the threat of the other party to destroy valuable property in his possession belonging to the promisor.

*Decided May 20th, 1909.*

Appeal from the Superior Court of Baltimore City (SHARP, J.).

The cause was argued before BOYD, C. J., BRISCOE, SCHMUCKER, THOMAS, WORTHINGTON and HENRY, JJ.

*Fleet W. Cox* (with whom was *Wm A. Wade* on the brief), for the appellant.

*T. R. Clendinen,* for the appellee.

BOYD. J., delivered the opinion of the Court.

The appellant sued the appellee on an agreement under seal and the defendant filed a plea that the agreement was procured by fraud and another alleging duress. The trial resulted in a verdict in favor of the defendant. The material

facts in the case are the following: The appellee leased to the appellant a property known as the Fauquier Sulphur Springs for the period of two years—beginning on the 1st day of June, 1899, and ending on the 31st day of May, 1901, with the privilege of an additional year on the terms mentioned in the lease. The lessee agreed to pay the premiums on insurance amounting to $26,000 to be taken out in the name of and for the benefit of the lessor, which payments in addition to the monthly sum of $150.00 were to be considered the annual rent for the premises. The lessor had the right to annul the lease and to re-enter upon failure of the lessee to pay the rent for the space of sixty days after it was due and payable. The lessee agreed to pay the premiums on the policy of insurance at least forty-eight hours before the expiration of the policies and to exhibit to the lessor the receipt for the premiums so that at no time during the lease the property should become uninsured and that in the event of his failure to pay either the premiums of insurance or taxes within the time specified the lessor had the right to annul the lease. It was further agreed that "should said hotel be destroyed by fire or so injured as to be unfit for use as a hotel, the said tenancy shall terminate, and all liability for rent hereunder shall cease upon the payment proportionately to the day of fire, and the said tenant shall not be liable for any further rent for or on account of this lease, then this lease shall be void and at an end, and the said Putts shall not be required to rebuild the said hotel."

The lease was extended for a year and on November 14th, 1901, the property was destroyed by fire. It was insured through the firm of Hansbrough and Carter, insurance agents, but at the time of the fire the premiums were not paid to the agents, although they had paid them to their companies and hence kept the insurance in force. Mr. Putts tendered the premiums due but the agents replied: "Mr. Putts, Mr. Moore placed this line with us, and the courtesy of the business requires for the check to come through Mr. Moore's hands." They told him, however, that if Moore did not pay the prem-

iums they would accept them from him. On November 20th, 1901, Mr. Putts sent them a check for the premiums still due, which they accepted and collected the money thereon.

Moore held the insurance policies and according to the testimony of Putts, threatened to destroy them unless he (Putts) signed the agreement sued on. Putts testified that he did not owe Moore anything at the time, and signed the agreement solely because he could not get the policies so as to collect the insurance unless he did. The agreement sued on was dated November 22nd, 1901, and is as follows:

"Whereas certain matters of difference have existed between Edgar B. Moore and John W. Putts; and,

"Whereas the parties hereto have agreed to a compromise and settlement of all their said differences in the manner, as follows:

"Now therefore this agreement witnesseth, that the said parties have agreed together as follows:

"That the said Putts will, on or before June 1st, 1902, pay to the said Moore the sum of five thousand dollars, less the sum of eight hundred and sixty-four dollars and six cents ($864.06), making the net sum to be paid forty-four hundred and thirty-five dollars and ninety-four cents.

"That if the said Putts shall sell his property at Fauquier Springs, Virginia, and receive the purchase money therefor, prior to said June 1st, 1902, then the sum last mentioned shall forthwith upon receipt of said purchase money, be paid by said Putts to said Moore; it being understood and agreed that whether said sale be made or not, the said last mentioned sum shall be paid on or before said last mentioned date.

"That the said payment, when made, shall operate as a full and final settlement of all matters of differences between the parties hereto of every nature, including an outstanding promissory note of the said Moore for one hundred and seventy-five dollars now held by the said Putts, and which is to be forthwith surrendered by him to said Moore.

"In case of such sale of said Fauquier Springs property, said Moore agrees to surrender possession thereof within thirty

days after the confirmation of said sale, and upon payment
of the said sum of four thousand one hundred and thirty-five
dollars and ninety-four cents."

The sum of $864.06 and the note for $175.00 mentioned
in the agreement were for rent then due Potts by Moore.
Putts agreed that at any time during the continuance of the
lease he would sell, at the request of Moore, and convey to
him or to such person or corporation as he designated, at and
for the sum of $30,000.00, all of the property included within
the provisions of the lease, which provided how the payments
were to be made. Moore undertook to justify his retention
of the insurance policies and to explain the sums named in the
agreement sued on by relying on the agreement he had to sell
the property.

There are four bills of exception in the record relating to
rulings on the testimony and the fifth presents the rulings on
the prayers, two having been offered by the plaintiff, which
were rejected. It will be more convenient to consider the
prayers before passing on the other exceptions. The first asks
the Court to instruct the jury that "there is no evidence legal-
ly sufficient to show fraud or duress exercised upon the de-
fendant by the plaintiff, and therefore their verdict should
on the said issue of fraud and duress, be for the plaintiff."

There would seem to be no possible doubt about the correct-
ness of the ruling of the Court in rejecting that prayer. The
only pretense for any claim by the appellant on the appellee
was that he contended that there was a verbal agreement by
which the appellee was to give him ten per cent. in case of a
sale or purchase of the property. There is no such provision
in the lease, but on the contrary it provided, as we have seen,
that the appellee at any time during the continuance of the
lease could at the request of the appellant sell and convey the
property to such person or corporation as he designated for
the sum of $30,000, and the terms of the sale included the
assumption of an existing incumbrance of $8,000.00, in addi-
tion to the payment to the appellee of $10,000 cash and a
second deed of trust for $12,000 payable in one year. There

was a further provision that if the incumbrance of $8,000.00 be paid before the purchase then the appellee was to be paid $10,000 and to take a mortgage or deed of trust for $20,000—one-half in one year and the other half in two years, without interest.

But regardless of what we have said, no sale was in point of fact made before the fire. The appellant himself admitted that he never brought anyone to the appellee who offered to buy or was able to pay $30,000 for the property. He did say he offered to pay that sum for the property, but admitted he was not able to do so. He also said he was negotiating with a "Mr. Spear, an undertaker of the City of Baltimore; he was a leading Elk;" but he said he did not know whether he could produce Mr. Spear, did not remember his first name, could not tell the street he lived on, and although called upon to produce him while the testimony was being taken, did not pretend to do so. He did not claim that he had consummated the sale before the fire and, of course, did not pretend that he or anyone would then give $35,0000 for the property which had been destroyed by the fire. The appellee testified that the appellant never told him of anyone who was willing to buy the property for $35,000 or $30,000, and that he brought no one to him for the purpose of buying it. It could not be pretended from the evidence in the record that the appellant would have had the slightest foundation to recover from or demand of the appellee any compensation for the sale of the property, as no sale was made.

Under those circumstances, the appellant had in his possession insurance policies amounting to $26,000, which he had taken out as required by the lease "in the name and for the benefit of the said John W. Putts, lessor." The appellee testified that the appellant refused to give him the policies unless he executed the agrement; that he threatened to destroy them if he did not, and he (appellee) believed he would destroy them. He said: "That when Moore said he would destroy the policies so I could not collect the insurance, defendant believed he would do so, and the contract sued on was

signed solely because of my inability to obtain the insurance policies to collect the insurance unless he did so." He further said he was not indebted to Moore in any way and that there was no other reason for signing the agreement. This appears in the cross-examination of the appellant: "Q. I ask you isn't it a fact if he hadn't given you that contract you wouldn't have given him the premiums and policies? A. No, sir; I wouldn't have given the policies and premium. Q. You would not? A. No, sir."

With such evidence in the record, how could such a prayer as the first have been granted? If that testimony is true, it is difficult to imagine a clearer case of fraud and duress in exacting such an agreement of the appellee before he could obtain possession of the policies of insurance which belonged to him. It would be a reflection upon the administration of justice to permit a plaintiff to recover on an agreement obtained as shown by the testimony of the appellee and, in effect, corroborated by that of the appellant himself. The cases relied on by the appellant to show that there was no fraud or duress are not applicable to such facts as these.

*Bouldin* v. *Stillwell*, 100 Md. 543, was an action of deceit. In *Spitze* v. *B. & O. R. R. Co.*, 75 Md. 162, the plaintiff filed a replication to a plea, relying on releases, in which replication fraud was alleged, but the Court held there was no fraud. That case, however, fully recognized the well-established doctrine that an instrument under seal could be impeached and set aside for fraud or duress. It is not claimed in this case, as it was in that, that the parties seeking to impeach the instrument did not know its contents, but the claim here is that the appellee was by fraud and duress compelled to sign this agreement in order to get possession of the policies of insurance which belonged to him and which appellant threatened to withhold from him and even to destroy unless he did sign the agreement. In *Bouldin* v. *Reynolds*, 58 Md. 491, it was held that the Court was not justified upon the testimony of the plaintiff alone "in setting aside a deed solemnly acknowledged and long acquiesced in without a murmur and

without the slightest hint to the person with whom she had dealt for the space of seven years and more that she had been coerced in the transaction and that the title of the purchaser was not good by reason of this." *Chicora Fer. Co.* v. *Dunan,* 91 Md. 144, was a case for specific performance, and does not reflect upon the questions here involved.

The second prayer was also properly rejected. Without reference to other questions suggested, it is sufficient to say that, although the issues made by the pleadings were fraud and duress, no reference is made to them or either of them, and the facts submitted by the prayer were unquestionably not sufficient to show there was no fraud or duress.

There is no difficulty about the exceptions to the testimony. The appellant contended that it was not admissible to offer evidence to show the want of consideration, as the instrument was under seal. The well-established rule that a seal imports consideration was not attacked or impinged upon, but the evidence was offered as reflecting upon the issues made by the pleadings. It was not only evidence, but competent and relevant evidence, to show in support of the alleged fraud that the appellee owed the appellant nothing and to show what induced the appellee to execute the agreement. It is sufficient to say in reference to the first exception that if it be conceded that part of the answer which the plaintiff moved to strike out was objectionable, the portion of it as to what occurred with Moore himself was undoubtedly admissible. Yet the motion was "to strike out the whole of that answer." What we have already said will relieve us from further reference to the other exceptions.

*Judgment affirmed, the appellant to pay the costs above and below.*