Anne V. **SANBORN**

v.

Margaret **WAGNER**, individually and trading as J. L. Mann and Company; and Joseph L. **MANN**, individually and trading as J. L. Mann and Company.

**Civ. No. 21040.**

United States District Court,
D. Maryland.

Feb. 15, 1973.

John Carroll Byrnes, Robert E. Sharkey, Baltimore, Md., for plaintiff.

Phillip M. Sutley, Robert G. Lembach, Baltimore, Md., for defendants.

HERBERT F. MURRAY, District Judge.

This case is brought under the so-called "anti-blockbusting" provision of the Fair Housing Act of 1968. Section 3604(e) of that Act makes it unlawful,

"[f]or profit, to induce or attempt to induce any person to sell or rent

any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, or national origin." 42 U.S.C. § 3604(e).

Enforcement of this provision by means of civil actions in appropriate United States district courts has been specifically granted to private persons. 42 U. S.C. § 3612(a). In this action Plaintiff alleges that Defendants violated Section 3604(e) and seeks relief in the form of compensatory damages, punitive damages, attorney's fees, court costs and "relief from any or all obligations, contracts, etc."

### Findings of Fact

Early in 1969 the Plaintiff, Anne V. Sanborn, owned and resided in a dwelling at 1632 Winford Road in the City of Baltimore, Maryland. Winford Road is a residential street running in an east-west direction between Loch Raven Boulevard and Perring Parkway in the northeast section of the city. It is clear from the evidence that the Winford Road area had always been primarily, if not exclusively, a white neighborhood. However, by 1969 the racial composition of this neighborhood began to change as Negroes moved into the immediate vicinity of the Plaintiff's home.

The advance of Negroes into this formerly white neighborhood created some concern and apprehension among the white householders. It is evident from the testimony that Plaintiff, a white woman and a widow with a young daughter, to some degree shared these feelings with her white neighbors. Also she had had thoughts of moving because her husband had died, her son had moved away, and she and her daughter did not need as much room. Thus, by early 1969 she harbored what could be characterized as a transient, but as yet, uncrystalized desire to move from her Winford Road home.

The Defendant, Joseph L. Mann, is a licensed real estate broker who does business under the trade name of J. L. Mann and Company. In early 1969, Mr. Mann had been a real estate broker for approximately ten years and through his company employed a number of sales agents who were active in the Winford Road area real estate market. The Defendant, Margaret Wagner, was employed on a part-time basis by Mr. Mann and his company as a real estate sales agent during 1969. Her major functions as a sales agent were to obtain real estate listings and bring buyer and seller together. However, only when she succeeded in her function of bringing buyer and seller together could she look forward to compensation in the form of a sales commission.

Early in the month of January, 1969, Defendant Wagner in her capacity as a real estate sales agent for J. L. Mann and Company, made an unsolicited telephone call to the Plaintiff. What was said in that conversation* is disputed, but on the credible evidence the Court finds that Mrs. Wagner made a number of statements to the Plaintiff to the effect that: "blacks are moving in . . . you should sell while you can still get a good price . . . the neighborhood is getting black and would be unsafe to live in . . . ." These comments were volunteered by Mrs. Wagner and were not responsive to any inquiry by Mrs. Sanborn as to the racial change in her neighborhood. It can only be concluded that the purpose of Mrs. Wagner's remarks was to prey on the fears of the Plaintiff and thus induce her to move out of her neighborhood.

Toward the end of January, 1969, Mrs. Wagner brought Mrs. Jonnie Grant, a prospective Negro buyer, to inspect the Plaintiff's home. The Plaintiff willingly permitted this activity to the extent of guiding this prospective buyer on a tour of her home. However, despite this and two subsequent inspection visits by Mrs. Grant, the Plaintiff still had not resolved to sell or even list her home with the Defendants.

On February 21, 1969, Mrs. Wagner, Mrs. Sanborn and two of Mrs. Sanborn's in-laws, Mr. and Mrs. Hugh Simpson,

met at the Sanborn home to discuss the possibility of selling the Winford Road property. To this end, Defendant Wagner brought to the meeting a prepared contract of sale for this property. Once again, as part of her remarks regarding the possibility of a sale of the Sanborn home, the Court finds on the credible evidence that Mrs. Wagner stated that "coloreds were moving into the neighborhood . . . she [the Plaintiff] should sell now because later on she wouldn't get the same price . . . if she remained her daughter would be associating with the 'new element' coming into the neighborhood . . . ." Despite the fact that the Plaintiff had not yet made any arrangements for a new home and, according to her testimony, had no idea where she was going to live, she nevertheless signed Mrs. Wagner's contract for the sale of her Winford Road home. As in the prior telephone conversation, the purpose of such racially oriented remarks could only have been to induce the Plaintiff to move out of her neighborhood.

Through the listings available to the Defendants, Mrs. Wagner was able to find a new home for the Plaintiff three weeks later at 4712 Helwig Road in the City of Baltimore. To secure this new residence, the Plaintiff signed a contract of purchase on March 14, 1969, and on March 28 tendered to Mrs. Wagner $300.00 as a deposit toward the purchase price of the Helwig Road property. Here, as in the sale of the Winford Road home, Mrs. Wagner acted on behalf of J. L. Mann and Company as the real estate sales agent for Mrs. Sanborn. Shortly after the purchase of the Helwig Road residence, the Plaintiff changed her mind about moving and refused to comply with the terms of the purchase and sales contracts she had executed.

### Conclusions of Law

1. Since this case arises under 42 U. S.C. § 3612(a), a federal question is present and jurisdiction exists under 28 U.S.C. § 1331(a), the jurisdictional amount having been expressly waived by the Congress under the terms of 42 U. S.C. § 3612(a). Venue is proper under 28 U.S.C. § 1391(b) by reason of the fact that both defendants reside in the District of Maryland and the claim arose here.

2. As set forth above, 42 U.S.C. § 3604(e) requires that a Plaintiff prove that Defendants' unlawful inducement or attempted inducement was made *for profit*, in order for liability to attach. It is therefore necessary to determine what constitutes a profit within the meaning of this statute. A recent decision by this Court clears up this matter.

"The words 'for profit' in section 3604(e) mean for the purpose of obtaining financial gain in any form . . . They [the words for profit] were evidently included in § 3604(e) to distinguish and eliminate from the operation of that subsection statements made in social, political or other contexts, as distinguished from a commercial context, where the person making the representations hopes to obtain some financial gain as a result of the representations." United States v. Mintzes, 304 F.Supp. 1305, 1311–1312 (D.Md.1969) (Thomsen, C. J.).

Although neither the pleadings nor the testimony evidenced the extent of the profit that was made as a result of the two transactions between the Plaintiff and Defendants, the statute does not require such a standard of proof. The testimony does reflect that the Defendants stood to gain six per cent commission on the sale of the Winford Road property. Moreover, it is clear that the relationship between the parties was strictly commercial and in the ordinary course of real estate brokerage business. Since it is equally clear that the Defendants were employed by the Plaintiff for the purposes of the transactions in question, under Maryland law the Defendants were entitled to a broker's commission for services rendered to the Plaintiff. *See* Maryland Code, Art. 2, § 17 (1956); Weinberg v. Desser, 243 Md. 347, 221 A.2d 66 (1966);

Sanders v. Devereux, 231 Md. 224, 189 A.2d 604 (1963); Hogan v. Q. T. Corp., 230 Md. 69, 185 A.2d 491 (1962). Such entitlement to a commission is a profit under § 3604(e) as interpreted by *Mintzes, supra.*

3. The Court finds that remarks made by the Defendant, Mrs. Wagner, to the Plaintiff in both the phone call of early January, 1969 and the meeting of February 21, 1969 constituted the type of representations proscribed by § 3604(e). Concededly, it can often be a knotty problem for the trier of fact to properly infer unlawful representations under § 3604(e) especially in situations where statements could be interpreted as good faith responses to questions or the statements themselves are carefully couched in innuendo. Grappling with this problem, United States District Judge Edenfield of Georgia concluded that:

"[i]n delineating what Congress means by 'representations' in § 3604(e) the court must keep in mind the basic purpose of the sections: to prevent persons from preying on the fears of property owners and inducing panic selling resulting in monetary loss to the sellers and instability in the neighborhoods involved . . . A § 3604(e) 'representation', then, would be any acts or words that would be likely to convey to a reasonable man, under the circumstances, the idea that members of a particular race, color, religion or national origin are or may be entering his neighborhood." United States v. Mitchell, 327 F.Supp. 476, 479 (N.D.Ga.1971).

In the instant case, the evidence shows that the Plaintiff was aware of the racial change occurring in her neighborhood and her apprehensions or misapprehensions caused by such change made her vulnerable to the type of exploitation § 3604(e) was designed to prohibit. Under these circumstances, the statements made to Plaintiff by Mrs. Wagner not only conveyed the idea that Negroes were entering the Plaintiff's neighborhood, but that their coming there would diminish property values or otherwise disadvantage those white homeowners who chose to remain. It makes no difference under § 3604(e) that the "busting" of the Winford Road "block" was not accomplished or even advanced due to Mrs. Sanborn's subsequent refusal to move. The liability of the Defendants is not dependent upon the success of their unlawful conduct. Brown v. State Realty Co., 304 F.Supp. 1236, 1241 (N.D.Ga. 1969). The Court concludes Defendant Mrs. Wagner's conduct was in clear violation of 42 U.S.C. § 3604(e) and therefore that Plaintiff is entitled to recover. Since Mrs. Wagner, in engaging in the prohibited conduct, was acting as the agent of Defendant Joseph L. Mann, trading as J. L. Mann and Company, and within the scope of her apparent authority, the Court finds that both defendants are liable to the Plaintiff. *See* Lewis v. Accelerated Transport-Pony Express, Inc., 219 Md. 252, 148 A.2d 783 (1959). *See also* Restatement (Second) of Agency § 459 (1958).

4. The Plaintiff seeks "relief from any and all obligations and contracts entered into by reason of the acts complained of." There are two obligations which the Plaintiff assumed as a consequence of the unlawful acts of the Defendants; the contracts for the sale of the Winford Road property and the purchase of the Helwig Road property. Under 42 U.S.C. § 3612(c), this Court "may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, *or other order* . . . in the case of a prevailing plaintiff . . . ." [emphasis supplied]. Although the Plaintiff does not seek injunctive relief to absolve her from the obligations incurred under the two contracts, the expansiveness of the "other order" language indicates that a non-injunctive remedy can be fashioned by the Court to fit this specific need. Thus, this Court has the power, under 42 U.S.C. § 3612(c) to ef-

fect a remedy with respect to the contracts executed by the Plaintiff.[1]

In this matter, it appears to the Court that the two contracts which Mrs. Sanborn executed were signed by her only after she received, and because she received, unlawful representations from the Defendants regarding the need to move because of the entrance or prospective entrance of Negroes into her neighborhood. But for such unlawful representations by the Defendants, the Plaintiff would not have entered into the contracts for the sale of her Winford Road residence and the purchase of the Helwig Road property. Given the circumstances and nature of the representations used to induce the making of such contracts, the Court will view these representations as tantamount to a duress or undue influence worked upon the Plaintiff by the Defendants. The key element in determining the existence of such duress is the state of mind of the person threatened. Hellenic Lines, Ltd. v. Louis Dreyfus Corp., 372 F.2d 753, 757 (2d Cir. 1967). "A finding of duress at least must reflect a conviction that one party to a transaction has been so improperly imposed upon by the other that a court should intervene." Id. at 758. The fact that Congress has seen fit to make unlawful the conduct which the Defendants employed to induce Plaintiff's action, convinces the Court that this type of conduct is as effective a form of duress as more blatant forms of threatened violence. See Struck Construction Co. v. United States, 96 Ct.Cl. 186 (1942). Cf. Cook v. Hollyday, 185 Md. 656, 45 A.2d 761 (1946).

The Plaintiff contracted for the sale of 1632 Winford Road with Sylvester and Jonnie Mae Grant, and for the purchase of 4712 Helwig Road with Ralph and Sarah Clelan. If these parties were before it, this Court might well act to set aside both of the contracts in ques-

1. 42 U.S.C. § 3612(c) does not specifically vest this Court with the remedial authority to rescind contracts which have been formed as a result of unlawful representations. However, a number of cases have alluded to the inherent equitable power of federal district courts to "provide such remedies as are necessary to make effective the congressional purpose." J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed. 2d 423, 428 (1964). In Borak, the Supreme Court was presented with the question of whether section 27 of the Securities Exchange Act of 1934 which grants district courts with jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created by this title . . . ", authorizes a federal cause of action for rescission of a corporate merger. In affirming a district court's right to order such rescission, the Court noted that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done. Id., quoting Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946).

In Jones v. Alfred H. Mayer Co., a Negro petitioner sought injunctive and other relief under 42 U.S.C. § 1982 to require respondents to sell him a particular type of home in a particular residential area. Though section 1982 did not specifically grant this form of relief, the Supreme Court held that "[t]he fact that 42 U.S.C. § 1982 is couched in declaratory terms and provides no explicit method of enforcement does not, of course, prevent a federal court from fashioning an effective equitable remedy." Jones v. Alfred H. Mayer Co., 392 U.S. 409, 414, n. 13, 88 S.Ct. 2186, 2189, 20 L. Ed.2d 1189, 1193 (1968). See also Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969).

In Williamson v. Hampton Management Co., 339 F.Supp. 1146 (N.D.Ill. 1972), the defendant was ordered, under the authority of 42 U.S.C. § 3612(c), "to tender to those plaintiffs a lease on that apartment or an equivalent apartment in the same building, commencing immediately and expiring on August 31, 1972, at a monthly rental of $265 per month, with the right and privilege of those plaintiffs to renew the lease for such period of time and at such rental as equivalent apartments are offered to white tenants." 339 F.Supp. at 1149. This order was issued by the court upon a finding that the defendant violated 42 U.S.C. § 3604(a) in unlawfully refusing to lease an apartment to Negroes. Id.

tion in accordance with Maryland law. *See* Cook v. Hollyday, 185 Md. 656, 45 A.2d 761 (1946); Moore v. Putts, 110 Md. 490, 73 A. 149 (1909). However, neither the Grants nor the Clelans have been named as parties in this action. Therefore, in the opinion of the Court it would be improper to adjudicate the contractual rights, if any, of these individuals in the course of ..a proceeding in which they have had no opportunity to be heard.

■ The Plaintiff, on the other hand, runs a potential risk of suit for her failure to execute the contracts which this Court has found she was wrongfully induced to enter. To afford relief to Plaintiff should such litigation ensue, it is only necessary to invoke the oft quoted rule that "wherever the wrongful act of one person results in liability being imposed on another, the latter may have indemnity from the person actually guilty of the wrong." Baltimore & Ohio R. Co. v. County Commissioners of Howard County, 113 Md. 404, 414, 77 A. 930, 933 (1910). *See* Md.Code Annot. Art. 50, § 21; State of Maryland v. Capital Airlines, Inc., 267 F.Supp. 298 (D.Md. 1967); Park Circle Motor Co. v. Willis, 201 Md. 104, 92 A.2d 757, 94 A.2d 443 (1953). Therefore, in the event that Plaintiff is ever caused to incur loss, cost, damage or expense as a result of a judicial decree that she specifically perform, or respond in damages to the Grants or the Clelans for breach of either or both of the contracts in question, the Plaintiff may in this Court seek indemnity against these defendants for any and all such losses sustained by the Plaintiff. The Court will retain jurisdiction of this case, therefore, for such period of time as may be necessary to permit relief under this provision of the judgment hereinafter entered.

■ 5. Plaintiff seeks compensatory damages of $300.00 which was the sum tendered to the Defendants on March 28, 1969 as a deposit toward the purchase price of the Helwig Road property. Under 42 U.S.C. § 3612(c), actual or compensatory damages may be awarded by the court to a prevailing Plaintiff. Williamson v. Hampton Management Co., 339 F.Supp. 1146, 1149 (N.D.Ill.1972). The evidence in this case is clear that the $300.00 which the Plaintiff paid to the Defendants as a deposit on the Helwig Road dwelling, was paid as a direct result of the unlawful conduct of the Defendants. The Plaintiff is therefore entitled to the compensatory damages she requests.

■ 6. Additionally, the Plaintiff urges that punitive damages, to the extent of $1,000.00, be awarded to her as a result of the Defendants' violation of § 3604(e). Pursuant to 42 U.S.C. § 3612(c), this Court may award not more than $1,000.00 in punitive damages in the case of a prevailing Plaintiff. Under all the circumstances shown in the evidence, the Court feels that an award of $500.00 in punitive damages is proper in this case.

■ 7. The Plaintiff also seeks an award of attorney fees which 42 U.S.C. § 3612(c) permits in the case of a prevailing Plaintiff. An award of such fees is limited by two statutory conditions. Only *reasonable* attorney fees may be granted, and only where the plaintiff, in the opinion of the court is *not financially able* to assume the burden of paying such fees. *See* 42 U.S.C. § 3612(c). On the matter of financial ability, there is some authority for the proposition that only an indigent plaintiff can obtain an award of attorney fees under § 3612(c). *See* 114 Cong. Rec. 5514 (1968) (remarks of Senator Mondale). However, in the opinion of this Court, economic reality dictates otherwise. Adoption of indigency as the test would summarily preclude recovery of any fees by persons with the financial ability to own any kind of home or to seriously seek home ownership. *See* Note, Blockbusting, 59 Geo.L.J. 170, 179–180 (1970). Therefore, the Court will consider financial inability within the special context of § 3612(c) to mean a homeowner or prospective homeowner of limited financial ability who clearly lacks the resources to fight a legal battle

under the "anti-blockbusting" Act without endangering his status as a homeowner or potential homeowner.

■ The evidence indicates that the Plaintiff, a widow with a minor dependent, received only a modest annual income by way of a pension. Although she possessed a substantial economic asset in her home ownership, her income clearly could not support the additional burden of legal expenses to prosecute this action. Because Congress has specifically provided a private remedy for victims of unlawful "blockbusting", it is reasonable to assume that private plaintiffs, such as Mrs. Sanborn, who are financially unable to bring suit under the Act, should not be thwarted in their pursuit of a remedy, especially where Congress has also permitted the award of attorney fees to a successful plaintiff.

Since the Plaintiff qualifies under § 3612(c) for an award of attorney fees, the Court must also, in its discretion, determine the extent of such award. 42 U.S.C. § 3612(c). As noted above, only reasonable attorney fees may be awarded. In determining what constitutes reasonable attorney fees in this case, the Court turns to the Code of Professional Responsibility of the American Bar Association as adopted by Rule 1230 of the Maryland Rules of Procedure. Canon 2 of the Code sets out certain considerations for determining the reasonableness of attorney fees. Among these considerations are "[t]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly . . . The amount involved and the results obtained. The time limitations imposed by the client or by the circumstances." Maryland Rules of Procedure, Code of Professional Responsibility, Canon 2, Disciplinary Rule 106(B) (1970). *See* Advance Business Systems & Supply Co. v. SCM Corp., 287 F.Supp.

143, 160–161 (D.Md.1968); Brotherhood of R. R. Signalmen v. Southern Ry. Co., 380 F.2d 59, 69 (4th Cir.), cert. denied, 389 U.S. 958, 88 S.Ct. 324, 19 L.Ed.2d 368 (1967); United States v. Jacobs, 187 F.Supp. 630, 636 (D.Md.1960).

■ Attorneys for the Plaintiff assert that they have expended in excess of 175 hours in the investigation, preparation and research of this case and that they should be awarded attorney fees reflecting such time. In support of this request, Plaintiff's attorneys have submitted two affidavits and attorney time records which purport to account for the expenditure of 175 hours. While the Court does not dispute this accounting, nevertheless the focus is upon the time and effort which would reasonably be required for the prosecution of this type of action. In the non-jury trial of this case which lasted approximately four hours, Plaintiff produced only three witnesses, including the Plaintiff herself, whose testimony, when measured against that of the Defendants' witnesses, merely presented a simple and factually rooted issue of witness credibility. No legal questions arose in the course of the proceedings which, in the opinion of the Court, required any special knowledge of the law. Although the action was originally brought approximately three and one-half years ago, there was at that time available for the guidance of counsel well considered decisions construing this legislation, including an opinion by the then Chief Judge of this Court.[2] During the intervening years a number of decisions and articles have dealt with the "anti-blockbusting" Act.[3] Though it may well be that counsel for the Plaintiff envisioned, and indeed planned for, a far more difficult battle on behalf of their client than ultimately proved necessary, this Court can only base its finding of reasonable attorneys' fees upon the work reflected by the pleadings, trial

2. Brown v. State Realty Co., 304 F.Supp. 1236 (N.D.Ga.1969); United States v. Mintzes, 304 F.Supp. 1305 (D.Md.1969).

3. See, e. g., Williamson v. Hampton Management Co., 339 F.Supp. 1146 (N.D.Ill. 1972); Note, Blockbusting, 59 Geo.L.J. 170 (1970); Annot., 34 A.L.R.3d 1432 (1970).

presentation and the research efforts properly to be inferred from what has actually been presented to the Court. After careful consideration, the Court finds that $750.00 constitutes a reasonable attorney's fee in this case.