Robert ADAMS et al., Plaintiffs,

v.

HEMPSTEAD HEATH COMPANY et al., Defendants.

No. 75 C 810.

United States District Court,
E. D. New York.

Feb. 16, 1977.

Eisner, Levy, Steel & Bellman, P. C. (Richard F. Bellman and Richard A. Levy), New York City, for plaintiffs.

Von Oister & Carter (James W. Carter), Port Jefferson, N.Y., for defendants.

MEMORANDUM AND ORDER

PRATT, District Judge.

After a bench trial in this housing discrimination action, the court by memorandum and order dated September 30, 1976 dismissed the claims of plaintiffs Charles Falzone and Nancy Falzone and awarded plaintiff Adams compensatory damages of $3,180, punitive damages of $500, and attorneys' fees of $1,000. Plaintiffs' attorneys moved to increase the amount of attorneys' fees to $4,560. Defendants cross moved to eliminate the compensatory damages. By memorandum and order dated December 3, 1976 the court denied defendants' cross motion and scheduled a hearing on the question of attorneys' fees. At that hearing on January 28, 1976 attorneys Richard F. Bellman and Richard A. Levy both testified as to the services they had rendered in this action. They were cross-examined by defendants' attorney. No other witnesses testified.

Counsel fees may be awarded in actions such as this under 42 U.S.C. § 3612(c).[1] In a memorandum and order issued September 30, 1976, the court explained the $1,000 fee awarded plaintiff Adams as follows:

In an action such as this, where an illegal discriminatory practice has been established and plaintiff is financially unable to afford his own representation, the court may allow attorneys fees to the successful plaintiff, 42 U.S.C. § 3612(c), *Stevens v. Dobs, Inc.*, 373 F.Supp. 618 (E.D.N.C.1974), even when plaintiff is not personally obligated to his attorneys as in the case of representation by a nonprofit legal services organization. *Hairston v. R & R Apartments*, 510 F.2d 1090 (C.A. 7 1975). On the evidence here, the court finds that plaintiff Adams is not financially able to assume the burden of his attorneys' fees, and is therefore entitled, as additional relief, to a reasonable attorneys' fee.

This case took two days to try and was carefully prepared and presented by plaintiff's attorneys. Approximately one-half of the work, however, was taken up with the claims of Mr. and Mrs. Falzone, which have been dismissed. Accordingly, the court finds that a reasona-

---

1. Subsection (c) of 42 U.S.C. § 3612 provides:
   The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 puni-

tive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: *Provided*, That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees.

ble attorneys' fee to the plaintiff Adams' attorney for work done in connection with the Adams claim would be $1,000.

After weighing all of the factors bearing upon the question of attorneys' fees and after considering the interaction of those factors with the circumstances of this case and the policies pertaining to the awarding of attorneys' fees in actions such as this, the court grants plaintiffs' motion for an increase in the attorneys' fees. A fair, reasonable, and appropriate fee to plaintiffs' attorneys, under all the circumstances of this case, would be $1,500.

Plaintiffs' attorneys argue that they have expended a total of 152 hours on this case, including approximately 40 hours in court. Mr. Bellman testified that the usual hourly rate in his firm is $75, but in this case (for reasons which were not disclosed) they were asking only $60 per hour. In making their calculations which led to the requested amount of $4,560, plaintiffs' attorneys acquiesced in the court's determination set forth in the memorandum and order dated September 30, 1976 that approximately 50% of the work in this case was related to the dismissed claims of Mr. and Mrs. Falzone. Plaintiffs' attorneys argue that they could not afford to handle cases such as this for an attorneys' fee of only $1,000. It developed on the hearing, however, that plaintiffs' attorneys had entered into a contingent fee arrangement with plaintiff Adams. Plaintiffs' attorneys were to be paid one-third of the total amount of compensatory and punitive damages recovered, with the amount of attorneys' fees awarded directly by the court to be offset against that one-third contingency. The actual fee which would be received by plaintiffs' attorneys under the court's original decision would, therefore, be $1,226.67. Even this sum, plaintiffs' attorneys argue, would be inadequate to warrant their taking such cases in the future.

Plaintiffs' attorneys further argue that they are qualified attorneys, experienced in the civil rights and housing field, and that the entire expense burden of this case should rest upon the defendants who were found guilty of a constitutional and statutory tort. There is no question but that attorney Bellman is eminently qualified in this field of law. Mr. Levy has spent a substantial amount of time in civil rights matters, both teaching and litigating; how much of that experience was in the field of housing discrimination was not made clear. For purposes of this motion, the court has assumed him to be fully qualified.

In opposition to the motion by plaintiffs' attorneys, defendants argue that the $1,000 awarded by the court for counsel fees was "not only proper, but liberal". Specifically, defendants argue that hours alone cannot be the measure of compensation. They point out that trial preparation can never truly be termed "completed", that the amount of time devoted to a particular case is solely within the control of the attorney involved, and that the hours themselves do not provide an objective standard or measure by which "the efficiency or necessity of that preparation" can be determined. Defendants further point to the additional work required because plaintiffs' attorneys failed to include the Falzones as parties plaintiff in the original complaint. This required an amendment to the complaint which was done by motion, although no request for a stipulation was made.

Defendants also protest the 32 hours claimed by defendants' attorneys to have been devoted to the preparation of the post-trial memorandum. A pretrial memorandum by plaintiffs had been prepared outlining the applicable law and the anticipated testimony of the witnesses. Plaintiffs' attorneys reported a total of 12 hours for the preparation of that memorandum. The posttrial memorandum reviewed the testimony actually given, and cited additional cases which had been reported in the 9 months following preparation of the original trial memorandum.[2]

2. The delay between the original trial memorandum and the actual trial was not the fault of

any party. Both parties had been told by the court they were going to trial in November,

It appears to the court that this was not a difficult or complex case. It involved no untested legal issues and, insofar as it related to plaintiff Adams, it presented a simple, straight-forward, factual exposition of Adams' single visit to the apartment house, his subsequent difficulty in finding housing, and the telephone calls and visits made by the "testers" for Suffolk Housing Services. There did not then, nor does there now, seem to be a need for having two attorneys present at the trial of this case.

Moreover, the "testers" who testified for plaintiff at the trial were employees of Suffolk Housing Services who were apparently familiar with the duties and procedures of their testing activities. One of the functions of Suffolk Housing Services is ferreting out and assisting in the prosecution of race related housing cases. The witnesses from that organization are trained personnel. While it never came out whether they had testified before, certainly the preparation of their testimony should not have occupied any significant quantity of time.

If a straight "hours expended" approach were to be adopted in cases such as this, the result would be to grant a "blank check" to the plaintiffs' attorneys. Without implying any criticism whatsoever of plaintiffs' attorneys here, all trial attorneys have experienced the conflict between the desire to do a thorough, masterful job, and the practical, economic limitations of a case. Many interesting and demanding factual and legal problems arise in cases which, as a practical matter, simply do not warrant thorough research, exposition, and analysis. Similar practical considerations must enter into a court's evaluation of a "reasonable" attorney's fee to be awarded to the successful plaintiff in a housing discrimination case. A simple case such as this, involving no novel questions of law, having no significant ramifications for the public, and resulting merely in damages to the complaining party, cannot merit an attorney's fee equal to what might be appropriate in a complex case involving novel questions of law and having widespread ramifications for the public.

From other cases in the civil rights field, it is clear that the courts have not applied a mechanical, time-clock approach to attorney's fees such as urged by the plaintiffs. $750 was awarded in *Sanborn v. Wagner*, 354 F.Supp. 291 (D.Md.1973), although plaintiff's attorneys had expended 175 hours. A similar amount was awarded to the successful plaintiff for attorney's fees in *Knight v. Auciello*, 453 F.2d 852 (C.A. 1 1972), after a trial which consumed three days. The subject trial consumed two days, roughly half of which pertained to Adams' claim.

One indicator of the reasonable value of the work done by plaintiffs' attorneys is the damages which were awarded. Here, they totaled $3,680.

Another approach to counsel fees in cases such as this which involve an element of "pro bono" work applies the standards of compensation set forth in the Criminal Justice Act, 18 U.S.C. § 3006A, although without the maximum limitation therein. See *Knight v. Auciello*, 453 F.2d 852 (C.A. 1 1972); *Stevens v. Dobs, Inc.*, 373 F.Supp. 618 (E.D.N.C.1974). That section compensates attorneys for indigent defendants in criminal cases at the rate of $20 per hour out of court and $30 per hour in court. If applied to the hours reported by plaintiffs' attorneys in this case, we find a total of 152 hours listed. 22 of those hours, however, were expended by a second attorney in final trial preparation and time at trial. Those 22 hours should be eliminated as unnecessary. The remaining 130 hours must be divided in half, consistent with the court's finding that only one-half of the work related to the successful Adams claim, a finding acquiesced in by defendants' attorneys, leaving 65 hours. 18 of those hours represent in-court time, which, if compensated at $30 per hour, would give $540; 47 of

---

1975. Other demands on that judge's calendar, however, prohibited the trial of the case at that time. Eventually, the case was reassigned to the undersigned judge in May of 1976 and reached for trial in August, 1976.

those hours represent out-of-court time, which, if compensated at $20 an hour, would give $940, yielding a total of $1,480.

Despite the foregoing analysis, the court recognizes that there is no mathematical formula by which a reasonable attorney's fee can be determined in any particular case. There is no question that plaintiffs' attorneys did an excellent job in preparing and arguing their case. The thrust of the court's decision is that they overdid it; the case actually presented in the courtroom did not justify all of the time which was expended in its preparation. The same result could have been accomplished with far less time and effort.

The court realizes that such a determination results, in part, from the point of view of the "Monday morning quarterback", and that the actual trial of an action is full of uncertainties. Much preparation must be devoted to possible issues which never materialize. Nevertheless, a slavish adherence to the time-clock approach cannot be the only test of a just award. The practical consequences of a purely time-clock approach in awarding attorney's fees in litigation of this sort would be far beyond Congress's intent in authorizing attorney's fees which are "reasonable".

Accordingly, after weighing all the above factors and considerations the court concludes that plaintiffs' motion for an increase in the amount of attorneys' fees should be granted to the extent of increasing the attorneys' fees awarded to plaintiff Adams for all services in connection with this action to date to the sum of $1,500.

SO ORDERED.