Melvin R. HAMILTON, Plaintiff-Appellant,

v.

Emery L. MILLER and Mary Katherine Miller, Defendants-Appellees.

No. 72–1216.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 21, 1972.

Decided May 1, 1973.

---

John M. Daly, Gillette, Wyo. (George L. Arnold, Laramie, Wyo., with him on the brief), for plaintiff-appellant.

John E. Stanfield, of Smith, Stanfield & Mendicino, Laramie, Wyo., for defendants-appellees.

Nathaniel R. Jones, Charles R. Carter, and James I. Meyerson, New York City, on the brief for NAACP, amicus curiae.

Sanford Jay Rosen, New York City, and David Minge, Laramie, Wyo., on the brief for American Civil Liberties Union, amicus curiae.

Before LEWIS, Chief Judge, and JONES * and McWILLIAMS, Circuit Judges.

LEWIS, Chief Judge.

This appeal taken by the plaintiff Hamilton follows the entry of an adverse judgment in the District of Wyoming after trial to the court sitting without a jury. Hamilton's complaint against the Millers alleged violations of the Civil Rights Act of 1866, 42 U.S.C. § 1982 and the Civil Rights Act of 1968, 42 U.S.C. § 3601, all arising from the failure of the Millers to rent to Hamilton an apartment located in Laramie, Wyoming. The appellate issues are limited to a consideration of whether the trial court erred in finding no actionable discrimination and to specific attacks upon three of the trial court's findings as being clearly erroneous.

Hamilton is a black student at the University of Wyoming. According to his testimony and that of others, he first tried to see the apartment, listed as for rent in the local newspaper, on May 11, 1971. He, accompanied by his fiancee, was told by Mrs. Miller that the apartment had already been rented. Hamilton then returned to the University campus and consulted with the dean of students and with a white law student, Larry Clapp, who also served as a student government housing official. Hamilton sought both advice and assistance in his concern as to whether his civil rights had been abused.

The following day Larry Clapp tried to rent from the Millers and was tentatively offered an apartment. Hamilton, soon thereafter, was again told by defendant Miller that no apartment was available. He informed Miller that Clapp did not want the apartment. A similar incident occurred one week later. A white University official was twice shown a Miller apartment as being available and the plaintiff was informed that no apartment was available.[1]

---

* Of the Fifth Circuit, sitting by designation.

1. The trial court was critical of the conduct of University officials, characterizing it as acting "under false pretenses", not in "good faith" and done for the purpose of "framing a law suit". We give no com-

 We have no hesitancy in stating that Hamilton established a strong prima facie case showing violations of the subject statutes. The trial court found and determined, however, that defendant's evidence was sufficient to refute the prima facie case and concluded that on the total record the plaintiff had not succeeded in supporting his claim by a preponderance of the evidence.[2]

Mrs. Miller testified that when Hamilton and his fiancee first inquired about the apartment in May they indicated their interests to be limited to obtaining an apartment when the University fall term began in September. Mrs. Miller told them to return in August to see if there was then a vacancy. The trial court fully credited Mrs. Miller's testimony and in so doing entered two of the findings which are now asserted to be clearly erroneous. We cannot upset such findings as a matter of law.

Concerning the two following incidents when Hamilton was told there was no apartment available defense witnesses testified that Hamilton was extremely aggressive, demanding that the apartment be rented to him. Miller testified that plaintiff's attitude and mannerisms led him to believe that Hamilton would be a troublesome tenant and that was the sole reason for his rejection. Miller stated, in effect, that he did not wish to personalize the rejection but preferred to deny the availability of the apartment. Miller's testimony was fully credited by the trial court and premises the remaining findings that formed the judgment below. Again, we cannot disturb the findings as a matter of law.

 As in any case where a determination of credibility dictates a result the chance of an injustice is ever present. But we cannot, as we are here urged in effect to do, try the case de novo. Such is not the function of an appellate court. The resolution of conflicting evidence, as exists in this case, is particularly within the province of the trial court and findings must be given added weight when we consider the opportunity of the trial judge to hear and observe the witnesses. United States v. 79.95 Acres of Land, etc., Rogers Co., Okl., 10 Cir., 459 F.2d 185, 187; Rosenfield v. Kay Jewelry Stores, Inc., 10 Cir., 384 F.2d 98, 100; Davis v. Cities Service Oil Co., 10 Cir., 420 F.2d 1278, 1279.

Affirmed.

---

fort to such criticism. While actions intended to found a law suit are not favored they at times must be tolerated. *See* Bush v. Kaim, D.C., 297 F.Supp. 151; Newbern v. Lake Lorelei, Inc., D.C., 308 F.Supp. 407; Harris v. Jones, D.C., 296 F.Supp. 1082. It would be difficult indeed to prove discrimination in housing without this means of gathering evidence. *See also* Evers v. Dwyer, 358 U.S. 202 at 204, 79 S.Ct. 178, 3 L.Ed.2d 222, where the Supreme Court said it was "not significant" that a black man boarded a bus for the purpose of instituting litigation attacking segregated operation of the bus system.

2. We are urged to hold that the defendant should have the burden of establishing his defense through clear and convincing evidence. We are not so persuaded. It is true, of course, that prejudice is difficult to prove except circumstantially. But it is equally difficult to disprove and we see no compelling reason to vary from traditional rules applicable generally to civil cases.