John W. MARR and Lucille Marr,
Appellants,

v.

Douglas RIFE et al., Appellees.

No. 73–1285.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 16, 1973.

Decided Sept. 26, 1974.

Denis J. Murphy, Patchen, Murphy & Allison, Columbus, Ohio, for appellants; Nathaniel R. Jones, James I. Meyerson, N.A.A.C.P., New York City, Denis J. Murphy, Columbus, Ohio, on brief; James J. Kozelek, Columbus, Ohio of counsel.

John E. Holzapfel, Smith, Clark & Holzapfel, Columbus, Ohio, for appellees; Charles T. Kaps, Columbus, Ohio, on brief.

J. Stanley Pottinger, Asst. Atty. Gen., Frank E. Schwelb, Elyse S. Goldweber, Attys., U. S. Dept. of Justice, Washington, D. C., William W. Milligan, U. S. Atty., Columbus, Ohio, on brief for U. S. amicus curiae.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Plaintiffs appeal from a decision of the District Court wherein three of four named defendants were found not to have violated the Civil Rights Act of 1866, 42 U.S.C. § 1982, and the Fair

Housing Act of 1968, 42 U.S.C. §§ 3601–3612. Trial was had to a United States District Judge for the Southern District of Ohio. Judgment was entered only against defendant-appellee Joseph Arntz.

Plaintiffs-Appellants, John and Lucille Marr, are black residents of Columbus, Ohio. During the period from approximately January 12, 1970, until February 12, 1970, they were negotiating for the purchase of a home which was being offered for sale by the Doug Rife Realtor Agency of Columbus. The dwelling involved was identified as 124 South Southampton, Columbus, located in what had been a predominantly white neighborhood. Between the above dates, the Marrs dealt with various sales agents employed by the Rife Realtors, including Joseph Arntz, Lloyd Simmons, and Ruth Barclay. Appellants assert that during negotiations these agents violated the above statutes, and that Douglas Rife, proprietor of the agency, should be made liable for the conduct of his employees.

In addition to the instant suit, appellants also initiated action through the Ohio Civil Rights Commission and the Housing Opportunity Center in Columbus. The latter organization arranged for various Caucasians, posing as prospective purchasers, to test whether the Rife employees were in fact engaging in illegal discriminatory practices, frustrating appellants' desire to acquire the above-mentioned property.

Plaintiffs' Appendix and other papers available to us disclose that from about January 12, 1970, to February 7, 1970, the Marrs, aided by representatives of the Columbus Housing Opportunity Center, exhibited interest in the purchase of a house at 124 South Southampton in Columbus. It was not, however, until February 10, 1970, that the Marrs made an offer to buy the premises at the owner's asking price of $21,500. Prior to that date they had made an offer of $20,900 which was submitted by an agent of Rife Realtors, but was not accepted by the owner. On February 10, 1970, the Marrs signed an offer to buy the property at the asking price of $21,-500. The Doug Rife Agency promptly submitted this to the owner who accepted it on February 12, 1970. The processing of this offer and completion of the transaction were carried on by agents of Rife Realtors, and delivery of the closing deed was made on April 30, 1970. We are not told just when the Marrs moved into the house. Mrs. Marr said they began their residence in the property about two and one-half years prior to trial of this lawsuit, which commenced on September 14, 1972. This would indicate that they moved in about the date when the deed was delivered in April of 1970.

Of the four defendants—Douglas Rife, Lloyd Simmons, Joseph Arntz and Ruth Barclay—the District Judge gave judgment only against Joseph Arntz, dismissing the action against the others. As to Arntz, the judgment awarded plaintiffs,

> "the sum of One Dollar ($1.00) compensatory damages, Two Hundred Fifty Dollars ($250.00) punitive damages and costs in the amount of $109.78."

The owner of the premises prior to the sale to appellants was William R. Gibbon. On or about January 19, 1970, the Rife Agency received an offer of one Robert J. Kramer to purchase the premises. Gibbon accepted the offer, but the sale was not carried out because of Kramer's inability to obtain the needed financing. While there is some uncertainty as to when this sale fell through, from his consideration of the evidence, the District Judge concluded that between January 19 and February 5, 1970, the property in question was not available for purchase. He went on to say that representations made by employees of the Rife Agency to checkers for the Housing Opportunity Center, who were assisting the Marrs, were consistent, to wit: "the property was under contract." He further found that "defendants did not know at that time that plaintiffs were black or that Learner and Jones [the checkers] were white." There was evidence, however, from which such knowledge could be inferred, depending upon resolution of credibility issues.

There was conflicting evidence, however, as to whether one or more of defendants falsely represented to the appellants that the property was under contract when they knew that it was available. There was also some evidence from which the District Judge could have found that one or more of the defendants, Arntz, Simmons or Barclay had expressed a view that they were opposed to selling the involved house to blacks, and that these defendants had attempted to frustrate the efforts of the Marrs and the checkers assisting them to purchase the house because of their knowledge that the Marrs were black.

In their address to us appellants set out the following questions for review:

"1. Whether the Court below committed reversible error in finding that, as a matter of fact, appellees Simmons and Arntz did not know during the middle of January, 1970, that the appellants were black.

"2. Whether · the Court below committed reversible error in concluding that a call to appellee Arntz was not initiated by a Columbus newspaper ad on the 5th of February.

"3. Whether the Court below committed reversible error in holding that the appellants failed to establish by a clear preponderance of the evidence that appellee Simmons committed actions proscribed by the Fair Housing Act of 1968.

"4. Whether the Court below committed reversible error in holding that the appellants failed to establish by a clear preponderance of the evidence that appellee Barclay committed actions proscribed by the Fair Housing Act of 1968.

"5. Whether the Court below committed reversible error in holding that the appellants failed to establish by a clear preponderance of the evidence that appellee Rife committed actions proscribed by the Fair Housing Act of 1968; and in refusing to apply the doctrine of respondent (sic) superior as to appellee Rife.

"6. Whether the Court below committed reversible error in awarding only one dollar ($1.00) compensatory damages.

"7. Whether the Court below committed reversible error in failing to award to the appellants reasonable attorney fees and in only awarding to them one hundred and nine dollars ($109) in costs."

We also have before us a brief for the United States as Amicus Curiae, partially supporting the appellants, and presenting the following questions:

"1. Whether the Court below erred in refusing to award plaintiffs compensatory damages.

"2. Whether the Court below erred in refusing to award plaintiffs reasonable attorneys fees.

"3. Whether the Court below erred in failing to impute to Rife the discriminatory conduct of Arntz."

■ We have reviewed the attack on the District Judge's Findings of Fact, examining for that purpose the contents of the Appendix to Brief of Appellants. This appendix is but a photo-offset reproduction of the entire transcript. Much of it is of little relevancy to the issues raised on appeal. From our examination of it, we are satisfied that the District Court did not err in finding that Lloyd Simmons, Ruth Barclay and Douglas Rife personally engaged in no discriminatory conduct violative of the statutes set out above. We affirm the District Judge's exoneration of defendants Simmons and Barclay. We conclude, however, that it is necessary to rule on the following contentions of the appellants: that the District Judge erred in holding that plaintiffs had the burden of proving their case by a preponderance of the evidence; that the award of compensatory damages and costs was inadequate; that plaintiffs should have been awarded reasonable attorney fees; and that defendant Rife should have been made liable for the conduct of his agent, Arntz, upon the doctrine of respondeat superior.

## I. *Burden of Proof.*

Appellants argue that the District Judge, in considering factual issues, was

required to hold that appellants' proofs had made out a prima facie case and that the defendants thereafter had the burden to overcome such prima facie case with clear and convincing evidence. As support for this, appellants cite various cases dealing with employment discrimination, e. g., Baker v. Columbus Municipal Separate School District, 329 F.Supp. 706, 720 (N.D.Miss.1971), aff'd, 462 F.2d 1112 (5th Cir. 1972); Armstead v. Starkville Municipal Separate School District, 325 F.Supp. 560 (N.D. Miss.1971); rev'd on other grounds, 461 F.2d 276 (5th Cir. 1972); Chambers v. Hendersonville City Board of Education, 364 F.2d 189 (4th Cir. 1966), where the courts required defendants to show the absence of racial motivation by clear and convincing evidence.

In opposing appellants' argument, appellees rely in part on the case of Hamilton v. Miller, 477 F.2d 908 (10th Cir. 1973), involving the Fair Housing Act. The Court there said:

> "We are urged to hold that the defendant should have the burden of establishing his defense through clear and convincing evidence. We are not so persuaded. It is true, of course, that prejudice is difficult to prove except circumstantially. But it is equally difficult to disprove and we see no compelling reason to vary from traditional rules applicable generally to civil cases." 477 F.2d at 910 n. 2.

■ We are of the view that none of the above cases cited by appellants are of controlling importance in deciding the burden of proof issue. We do believe, however, that a plaintiff in a Section 3612 suit must show a violation by a preponderance of the evidence.

The Fair Housing Act provides two means of enforcing its provisions. Under Section 3610(a), a person "aggrieved" may file a complaint with the Secretary of Housing and Urban Development, and investigation and resolution of the complaint's charges is accomplished by the Secretary. If the Secretary is unable to obtain voluntary compliance within a certain period, a civil suit may be commenced by the person aggrieved. (Section 3610(d)). However, it is provided under Section 3610(e) that "[i]n any proceeding brought pursuant to this section, the burden of proof shall be on the complainant."

The alternate route for obtaining redress for a violation of the Act is pursuant to Section 3612, which provides the right to file suit in a federal or state court without awaiting action by the Secretary. Although Section 3612 fails to indicate the burden of proof to be applied, it would be anomalous for a different burden of proof to apply under that section than is applied under the Section 3610 procedure. By adopting appellants' suggested burden of proof, we would virtually eliminate any reason for seeking voluntary enforcement under Section 3610. This we decline to do.

We hold that the District Court was correct in holding that the appellants were required to carry the burden of proof by a preponderance of the evidence. It should be noted that the amicus brief of the United States does not join in appellants' contention as to the burden of proof.

In this connection, we recite that on August 27, 1970, the Ohio Civil Rights Commission wrote to Doug Rife Realtors as follows:

> "The Ohio Civil Rights Commission has carefully reviewed and discussed our investigator's documented COMPLIANCE REVIEW REPORT. In regular session on August 19, 1970, the Commission adopted the recommendation to close the subject matters. Therefore, the matters have been closed.
>
> "In behalf of the Commission, I again thank you for your cooperation."

## II. *District Court Findings.*

■ Except as we have set out above, we will not attempt to review all of the evidence upon which the District Court made its factual findings. The Court determined that defendant Arntz was guilty of discriminatory practice, which finding is not being appealed by Arntz.

We also find that there was conflicting evidence offered as to the charges against Simmons and Barclay. Resolution of this conflict was for the District Judge, whose findings may not be set aside unless we are of the view that they are "clearly erroneous." Fed.R.Civ.P. Rule 52. We are not persuaded that his findings exonerating Simmons and Barclay are clearly erroneous.

As to Barclay, a motion for dismissal at the conclusion of the plaintiffs' evidence was sustained. Rule 41(b), Federal Rules of Civil Procedure, provides for such practice, and review is again limited to a determination of whether the District Court's finding supportive of such ruling was clearly erroneous. Woods v. North American Rockwell Corp., 480 F.2d 644, 646 (10th Cir. 1973); Simpson v. United States, 454 F.2d 691, 692 (6th Cir. 1972). We do not consider that the relevant findings of the District Judge were clearly erroneous. It was for him to resolve the conflicts in the evidence as to whether Simmons and Barclay had been guilty of actionable discriminatory conduct.

### III. *Vicarious Liability of Doug Rife.*

There was no evidence that Doug Rife, the owner of the Doug Rife Realtor Agency, had personally joined in any discriminatory acts against appellants. Appellee Joseph Arntz, against whom judgment was entered, was an employee and agent of the Rife Agency, and the evidence indicated that Doug Rife, as proprietor of the agency, received some portion of the commissions earned by his agents. The District Judge, however, denied appellants' contention that Doug Rife, as proprietor of the agency, should be charged with Arntz' misconduct under the rule of respondeat superior. In making this ruling, the District Judge relied on the law of Ohio. We hold that this was error.

Although this Court has not decided the extent to which state law is to guide a principal's liability under the Fair Housing Act, we believe prior decisions in other areas of civil rights direct us to use federal—not state—law.

In Nelson v. Knox, 256 F.2d 312 (6th Cir. 1958), appellant brought suit under 42 U.S.C. § 1983, alleging that various city officials of Huntington Woods, Michigan, had passed and enforced discriminatory ordinances thereby destroying his garage business. As one ground for dismissing the complaint, the District Judge determined that the defendant officials were immune from suit under Michigan law. Justice Stewart, then a member of this Court, stated:

"We hold at the outset that the extent of the defendants' insulation from liability under the Civil Rights Act cannot properly be determined by reference to the local rule in Michigan. Surely each state cannot be left to decide for itself which of its officials are completely immune from liability for depriving a citizen of rights granted by the Federal Constitution. The question must be decided as a matter of general law." 256 F.2d at 314.

*See also* Lynch v. Johnson, 420 F.2d 818, 820–821 (6th Cir. 1970); 1A J.Moore, Federal Practice, ¶0.323[3], at 3732 (1965). In addition, this Court has said that "[w]here a decision is likely to have a substantial effect on the implementation of a federal program, then a federal court should declare a rule consistent with the program's demands." United States v. Carson, 372 F.2d 429, 432 (6th Cir. 1967).

An examination of the Act, 42 U.S.C. §§ 3601–3612, reveals a broad legislative plan to eliminate all traces of discrimination within the housing field. To allow such a purpose to be controlled by state law might well defeat this objective. We believe that in such a situation this Court is not restricted by the law of the various states, and that it should apply federal law.

The law which is to control enforcement of the Congressional Acts in the area of housing discrimination is still in the developmental state. We consider, however, that some decided cases are sufficiently analogous to the present case to warrant our discussion of them.

In United States v. Northside Realty Associates, Inc., 474 F.2d 1164 (5th Cir. 1973), the Fifth Circuit made findings of fact relevant to the rule we consider. Appellant Northside was located in Atlanta and had various branch agencies, one of which was managed by its Vice President, Isakson. All salesmen worked on a commission basis, and it was found that of the 3000 homes sold since passage of the Act in 1968, none had been sold to blacks. The District Court determined that Isakson had violated the Act by "denying to a prospective black buyer that he, Isakson, sold real estate —without explaining that Northside Realty, of which he was Executive Vice-President, did, and then referring him to a black real estate agency; by showing an intention not to cooperate with a black realtor; and by various other acts." In affirming the District Court's finding of liability on the part of the corporate defendant, the Court of Appeals said:

"In light of the fact that Ed Isakson (1) is the Executive Vice President of Northside Realty, (2) is the broker whose license inures to the benefit of the corporation and enables it to engage in the business of selling real estate, and (3) directly supervises one sales office of Northside Realty and is in charge of hiring or selecting the sales managers for the other Northside offices, we do not think it clearly erroneous for the District Court to conclude that appellant Isakson acted within the scope of his duties when he spoke to customers at the office that he supervised and when he discussed sales policy with other people in the real estate business. Nor do we think the District Court was clearly erroneous in finding· that these activities were conducted with the intention of benefiting the corporation for which Isakson served as executive vice president. *See* Standard Oil Co. of Texas v. United States, *supra,* 307 F.2d 120, 5 Cir." 474 F.2d at 1168.

United States v. Youritan Construction Co., 370 F.Supp. 643 (N.D.Cal. 1973) involved discrimination in the renting of apartments, with the government seeking to enjoin the company owner, T. S. Tan, from further discrimination. In holding that the owner was vicariously liable, the District Judge said:

"The discriminatory conduct of an apartment manager or rental agent, is as a general rule, attributable to the owner and property manager of the apartment complex, both under the doctrine of *respondeat superior* and because the duty to obey the law is non-delegable. United States v. Real Estate Development Corp., supra [D. C., 347 F.Supp. 776]; United States v. Reddoch, supra; Williamson v. Hampton Mgt. Co., 339 F.Supp. 1146 (N.D.Ill.1972); and United States v. Mitchell, 335 F.Supp. 1004, 1006 (N. D.Ga.1971). As the court stated in United States v. Real Estate Development Corp., supra, 347 F.Supp. at 785 (apartment case):

The resident managers and managers of the defendants, as agents of the defendants, are authorized to represent the defendants and can rent in no other capacity. Their acts and statements, made within the scope of their agency, are attributable to the defendants, whose duty to comply with the law is non-delegable. United States v. Reddoch, supra, slip opinion at 28; Williamson v. Hampton Mgt. Co., 339 F.Supp. 1146 (N.D.Ill.1972)."

370 F.Supp. at 649. *See also* United States v. Real Estate Development Corp., 347 F.Supp. 776 (N.D.Miss.1972).

At trial, appellee Arntz testified that the salesmen at the Rife Agency worked on a commission basis, and that except for floor time—time spent at the agency—they selected their own working hours. He also testified that Rife did have certain controls over salesmen, though most rules established by Rife were due to the broker-salesman relationship. "These are the things that when you take the real estate license commission examination pretty much establish the results." No contracts were

signed by salesmen, for example, because their license was "through the broker." Appellee Simmons' testimony was similar to Arntz' in that the only control which Rife exercised over the salesmen, other than that provided by law, was the requirement of spending time on the floor. We also note the following from appellee Rife's testimony:

"[Question] In what capacity are they [the salesmen] engaged in the sale of real estate of Douglas Rife?

"[Answer] They list homes, make appointments, sell homes. They are real estate sales people.

"Question: Are they under your general supervision?

"Answer: Yes.

"Question: Do you give your final approval on contracts or are you consulted in regard to various purchase contracts or offers that are made through Doug Rife Realty through one of your agents; Mr. Arntz, Mr. Simmons, or Mrs. Barkley? (sic).

"Answer: If there is an unusual circumstance, I would be consulted.

"Is that basically correct, the latter part, that if there is an unusual circumstance in a transaction, you would be contacted?

"A. I believe so. If something was different I think they would consult me."

While this evidence does not indicate that Arntz acted with the approval or at the direction of appellee Rife, we do not believe that such a finding is necessary in order to hold Rife liable. As owner of the agency, Rife had at least the power to control the acts of his salesmen. Rife would, therefore, be liable for compensatory damages resulting to the Marrs.

### IV. *Compensatory Damages.*

The District Judge awarded One Dollar ($1.00) as compensatory damages. The evidence offered to support appellants' claim for such allowance included Mrs. Marr's own testimony as to an illness for which she was hospitalized at Mt. Carmel Hospital, the testimony of a doctor who attended her at the hospital and a psychiatrist who first saw Mrs. Marr about two and one-half years after her hospitalization for the purpose of testifying in support of her claim of damages. There was testimony that charges of the doctors totalled $65.00, and hospital records introduced in evidence disclose that its charges for attending Mrs. Marr were $660.10.

The first of these records, made at the time of her admission, set out that she was "complaining of epigastric pain." A later record showed that Mrs. Marr advised that she had "eaten pickles and sauerkraut" several hours prior to the onset of pain. The record made at the time of her admission as an out-patient contained no claim by her that her indisposition was related to discriminatory treatment she had received when she was seeking to buy the house at 124 South Southampton. The admission record also recited that Mrs. Marr's personal physician was a Doctor Rusoff. This doctor did not appear as a witness at the trial. Her discharge summary, after setting out that "[s]he had a history of ulcer disease one year PTA [prior to admission] and treated with some medications," contained the following:

"All laboratory tests including admission CBC ELECTROLYTES, URINALYSIS and multiple SERIAL ENZYMES including CPK, HBD, LDH, CREATININE, BUN, BLOOD SUGAR were all normal. There was no growth on the URINE CULTURE. 24 hour URINARY AMYLASE was normal, as was the serum AMYLASE. BILIRUBIN was negative and trace. PROTEIN ELECTROPHORESIS was normal. X-rays of the upper GI, gall-bladder and chest were negative. Serial EKGs were normal.

"HOSPITAL COURSE & TREATMENT: Patient was admitted to the SMU and treated initially as a possible MI [myocardial infarction]. The enzymes and EKGs were normal. She was discharged to the medical floor after infarction was ruled out and then the other investigations were carried out. *When these were nega-*

*tive, patient was approched about possibility of tension causing her dif-ficulties. She agreed and her prob-lems were briefly discussed.* She was discharged improved on no medica-tions, to 'be followed by her doctor." (Emphasis supplied.)

Thus, the admission and dis-charge records contain nothing from Mrs. Marr attributing her indisposition' to the alleged discrimination. When it was suggested to her that tension might have caused her illness, she did not at-tribute these tensions to the charged discrimination. Defendants put in no medical testimony to rebut the doctors' testimony that Mrs. Marr's illness could have been the product of discriminatory treatment by Arntz and others. We are not advised by the District Judge wheth-er the foregoing led him, as it could have, to conclude that Mrs. Marr's ill-ness and hospitalization were not the product of discriminatory conduct by de-fendant Arntz.

The District Judge's opinion and his findings of fact do not disclose the rea-son for an award of only $1.00 as com-pensatory damages. Upon the remand which we order, the District Judge should make clear the reason for his finding on compensatory damages. (Rule 52, Fed.R.Civ.P.)

### V. Allowance of Costs.

Appellants' brief asserts that they had submitted to the District Court a bill of costs in the amount of $869.78. Costs were allowed in the amount of $109.78. Without now ruling that this allowance was error, we again hold that upon remand some explanation should be given as to the basis of the District Judge's consideration and award of costs. We also hold that Douglas Rife, as owner of the agency, should be made liable for such costs.

### VI. Attorney Fees.

No attorney fees were allowed to appellants and no reason was given by the District Judge for this action. 42 U.S.C. § 3612(c) provides, in part, that the trial court,

"may award to the plaintiff * * * court costs and reasonable attorney fees in the case of a prevailing plain-tiff; *Provided*, That the said plaintiff in the opinion of the court is not fi-nancially able to assume said attor-ney's fees."

In 42 U.S.C. § 1982 there is no ex-press authorization for awarding attor-ney fees. Nevertheless, such expenses have been awarded in Section 1982 cas-es. Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971).

The evidence showed that appellants had a joint income of $9,739 and $12,847 in 1969 and 1970, respectively. The Dis-trict Judge had the right to weigh such fact in considering the matter of an award for appellants' attorney fee. We do not consider, however, that the shown amount of appellants' earnings would necessarily be dispositive of the ques-tion. The brief for appellants sets out a claim that their attorneys devoted 127 hours to their handling of this lawsuit and had paid out $131.70 in expenses.

The Supreme Court in Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), indicated a policy favoring the award of attorney fees. The Court there said:

"If successful plaintiffs were routine-ly forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public in-terest by invoking the injunctive pow-ers of the federal courts." 390 U.S. at 402, 88 S.Ct. at 966.

*See also* Hall v. Cole, 412 U.S. 1, 5–6, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391–392, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). This policy favoring the award of attorney fees has been recog-nized and applied by courts in actions under the Fair Housing Act. *See* Steele v. Title Realty Co., 478 F.2d 380, 385 (10th Cir. 1973); Sanborn v. Wagner, 354 F.Supp. 291, 297 (D.Md.1973).

■ While keeping in mind the above policy, it must be remembered that the award of attorney fees is controlled by specific statutory language. Section 3612(c) first states that the court *may* award attorney fees. Such language is permissive, not mandatory, in nature and it therefore is in keeping with the general rule that the Court may exercise discretion. Whitehead v. Richardson, 446 F.2d 126, 128 (6th Cir. 1971). The above Section then adds the caveat: *"Provided,* That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees." Although we do not regard this caveat as limiting the award of attorney fees only to those of indigent status, *accord,* Sanborn v. Wagner, *supra,* 354 F. Supp. at 297, it does indicate an intention to allow a District Court considerable discretion.[1] Our inquiry is limited to whether this discretion was abused.

To deny appellants any recovery for attorney fees when they were at least partially successful in their suit would, we believe, be inconsistent with the policy favoring the award of attorney fees. At the same time, it might indeed be unfair to impose all the attorney fees upon a single defendant when the suit involved numerous alleged violations by various defendants and only one was found to be meritorious. In such a case it might be the better rule to allow a plaintiff a proportionate amount of attorney fees to the extent that he prevailed in the suit.

This rule allowing a proportionate share of attorney fees has been used in other areas of civil rights litigation. In Schaeffer v. San Diego Yellow Cabs, Inc., 462 F.2d 1002 (9th Cir. 1972), the court was faced with a Title VII sex discrimination case. Section 706(k), 42 U. S.C. § 2000e–5(k), allowed the award of attorney fees, in the court's discretion, to the prevailing party. The District Court awarded $600 out of a claim of $2,220 in such fees. On appeal, the Ninth Circuit said:

"The allowance of reasonable fees in civil rights cases is an important feature of the enforcement provisions of that Act * * * . The amount of the award should not be such that it would discourage others from seeking to attack discriminatory practices. However, the amount of the award should also be proportionate to the extent to which the plaintiff prevails in the suit." 462 F.2d at 1008 (citations omitted).

■ Upon remand of this cause, the District Judge should articulate what prompts his discretionary action as to attorney fees. See Milburn v. Huecker, 500 F.2d 1279 (6th Cir. 1974). We make no command as to his action in this regard.

## VII. *Punitive Damages.*

The District Judge assessed punitive damages against defendant Arntz in the sum of $250. The appellants' brief does not assert that this amount was inadequate; neither does appellants' address to us consider whether Douglas Rife should be made liable for punitive damages. The brief of the United States, as amicus curiae, does ask, however, that defendant Rife be made to respond for the punitive damages assessed against Arntz.

■ Such damages as a rule are disfavored in the law and are awarded where willful or wanton conduct can be shown, *see, e. g.,* Newman v. Nelson, 350 F.2d 602, 604 (10th Cir. 1965); Wright v. Kaine Realty, 352 F.Supp. 222 (N.D. Ill.1972), or as a deterrent measure, Lee v. Southern Home Sites Corp., 429 F.2d 290, 294 (5th Cir. 1970); Green v. Wolf Corp., 406 F.2d 291, 303 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

■ The discriminatory act of Arntz was in itself insufficient to show that Rife had failed to prevent discrimination by his salespeople. Neither appellants' brief nor that of the United States, amicus, sets out what facts sup-

1. The proviso found in Section 3612(c) is not found in other civil rights laws allowing attorney fees. *See, e. g.,* 42 U.S.C. § 2000a–3(b) (Title II); 42 U.S.C. § 2000b–1 (Title III); 42 U.S.C. § 2000e–5(k) (Title VII).

port a claim that there was a pattern or practice of discrimination in the agency, or that Rife was aware of Arntz' misconduct. If the District Judge, upon his review of the entire record, is persuaded that Rife was, by action or knowledgeable inaction, involved in the wrongdoing, he may tie him into the award for punitive damages. Again, we issue no relevant command.

### VIII. *Conclusion.*

This cause is remanded to the District Court for reconsideration of the award of compensatory damages, costs and attorney fees. Rife should be liable for such items. While we direct no change in the amount of punitive damages, we do ask the District Judge to consider whether both Rife and Arntz should be held liable for punitive damages already assessed.

This cause is remanded to the District Court for further findings consistent with this opinion. Each party shall bear his or her costs of appeal.