John and Susan HARRISON, Plaintiffs,

v.

OTTO G. HEINZEROTH MORTGAGE COMPANY and Otto G. Heinzeroth and John Haugh, Defendants.

Civ. No. C 74–390.

United States District Court, N. D. Ohio, W. D.

March 4, 1977.

Joseph R. Tafelski, Toledo, Ohio, Jay Mulkeen, Washington, D. C., John A. Harris, III, Toledo, Ohio, for plaintiffs.

B. Thomas Handwork, Jr., Toledo, Ohio, for defendants.

## OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

DON J. YOUNG, District Judge:

This action was originally commenced by John and Susan Harrison, who at the time were husband and wife, against the defendants claiming racial discrimination in housing, in violation of the 1968 Fair Housing Act, 42 U.S.C. §§ 3604(a), 3604(c), 3605, and 3617. Although both complaint and amended complaint sought to bring the matter as a class action, no class was ever established. The matter proceeded and was tried to the Court, sitting without a jury, as the individual complaint of the plaintiffs. This opinion will serve as the Court's findings of fact and conclusions of law.

At the trial of the case, the plaintiff Susan Harrison failed to appear, and counsel for plaintiffs indicated that she did not intend to appear. Thereafter defendants called her for cross-examination, and upon her failure to appear and testify, moved to dismiss her action against them. The Court granted the motion and dismissed the plaintiff Susan Harrison's action for want of prosecution. Hereinafter the plaintiff John Harrison will be referred to as the plaintiff.

The facts of the matter are simple, but the evidence was in complete conflict. The ultimate resolution of the matter is therefore dependent entirely upon the credibility of the witnesses. The Court resolves that issue in favor of the plaintiff.

Briefly stated, the plaintiff claims that early in the year 1974 he was living in an apartment in an area of Toledo called the Old West End, which is in general a racially mixed area. He decided to buy a house, and located one which pleased him some seven blocks from his apartment. He entered into an informal, unwritten purchase agreement with the owner, and gave the the owner one hundred dollars earnest money. In order to finance the purchase, the plaintiff desired to get a conventional mortgage loan with a ten percent down payment with the assistance of the Mortgage Guaranty Insurance Corporation (hereafter MGIC). Ultimately he succeeded in doing so and purchased the property, which was located at 2702 Scottwood Avenue in Toledo.

To commence his search for financing, the plaintiff looked in the classified section

of the telephone book and selected the defendant Otto G. Heinzeroth Mortgage Company (hereafter defendant Company) to call. Defendant Company is a corporation and the defendant Otto G. Heinzeroth individually (hereafter defendant Heinzeroth), is its president and owner.

In his telephone call to the defendant Company, the plaintiff talked with a person who identified himself as the defendant Haugh (hereafter Haugh). The plaintiff says that after he told what he wanted in the way of financing, Haugh asked where the house was, and when the plaintiff told him, Haugh said that was a bad area, as it was transitional from white to black. Because of the racial problems there, the only conventional financing available was with a fifty percent down payment. Haugh said that if the plaintiff would look for property elsewhere, he would probably be able to get the financing he wanted.

Later the plaintiff talked with Haugh on two other occasions, with similar talk about the racial character of the neighborhood. Haugh did reduce the amount of down payment to forty percent, and in the last conversation, which was a personal meeting on April 4, 1974, Haugh again elaborated on the racial problems. He sketched a map of the area showing the location of the house, and of Scott High School, which Haugh said had ninety-nine percent black students.

Plaintiff testified to being very much upset by their conversations.

Plaintiff also offered the testimony of Warren Karmol, Jr. Late in June, 1974, Karmol went to the defendant Company's office and talked to Haugh about getting financing to purchase a house in the area of the property purchased by the plaintiff. Karmol had some slight acquaintance with Haugh, as they had been in high school together. Haugh made similar statements about the racial problems in the neighborhood to Karmol that he had made to the plaintiff.

Haugh flatly denied saying most of what the plaintiff and Karmol attributed to him, and explained the rest as being innocent responses to questions.

The defendant Heinzeroth and Charlotte Roush, the Vice President and Assistant Secretary of the defendant Company, testified that from early in 1973 the Company had confined its activities to F.H.A. and V.A. mortgage financing, as interest rates on conventional mortgages had become prohibitively high. They denied any sort of racially discriminatory practices, or permitting any of the defendant Company's employees to engage in any sort of such practices.

The defendants also offered evidence to show that the defendant Heinzeroth and the defendant Company did much to help minority persons get homes and property, and had never been known to make racially discriminatory utterances, or to have been guilty of any sort of racially discriminatory practices.

█ No attempt has been made to analyze in complete or exhaustive detail the testimony of the plaintiff, his witness Karmol, or Haugh. The Court, however, heard and saw the witnesses, listened carefully to all of the testimony, saw and reviewed the exhibits, and thus reached the conclusion that the facts are essentially as stated by the plaintiff. To the extent that Haugh's testimony conflicts with the plaintiff's version of the matter, it is rejected and not believed by the Court. In reaching this conclusion the Court has carefully applied all the rules which have been formulated over the centuries of our common law to guide finders of fact in determining the credibility of witnesses and the weight of evidence. It would add much length, but no substance, to this opinion to go into detail about these matters. It is clear that the actions of Haugh that are found by the Court to have taken place violate the provisions of Title 42 U.S.C. §§ 3604(a), 3604(c), 3605, and 3617.

█ Thus the Court has no difficulty in finding the defendant Haugh liable to the plaintiff. Under the law, such a finding impels the same judgment against the defendant Company and the defendant Heinzeroth, its president, for it is clear that their

duty not to discriminate is a non-delegable one, see Marr v. Rife, 503 F.2d 735 (6th Cir. 1974); United States v. Youritan Constr. Co., 370 F.Supp. 643 (N.D.Cal.1973), modified as to relief and aff'd, 509 F.2d 623 (9th Cir. 1975); United States v. L & H Land Corp., Inc., 407 F.Supp. 576 (S.D.Fla.1976); Zuch v. Hussey, 394 F.Supp. 1028 (E.D. Mich.1975); United States v. Real Estate Development Corp., 347 F.Supp. 776, 785 (N.D.Miss.1972), and that in this area a corporation and its officers are responsible for the acts of a subordinate employee, even though these acts were neither directed nor authorized. See Marr v. Rife, supra; United States v. Northside Realty Associates, Inc., 474 F.2d 1164 (5th Cir. 1973); United States v. L & H Land Corp., Inc., supra; United States v. Youritan Constr. Co., supra. This ruling troubles the Court to some extent, for it seems harsh to punish innocent and well-intentioned employers for the disobedient wrongful acts of their employees. However, great evils require strong remedies, and the old rules of the law require that when one of two innocent people must suffer, the one whose acts permitted the wrong to occur is the one to bear the burden of it.

The plaintiff by the prayer of his amended complaint seeks injunctive relief, both prohibitory and mandatory, $10,000.00 actual and compensatory damages and $6,000 punitive damages, together with costs including reasonable attorney fees.

■ Little, if any, evidence was offered as to any of these matters, and from the evidence as a whole it seems to the Court that since the defendant Haugh has left the employ of the other defendants, there is no need for a prohibitory injunction as prayed for against them. The evidence is clear that they never did any of the things complained of, except vicariously through Haugh's actions. However, a prohibitory injunction will be granted as prayed for against the defendant Haugh.

■ The evidence makes no showing whatever which would either require or jus-tify the mandatory injunction prayed for. The mandatory injunction is so powerful a weapon, and so extremely difficult to wield, that one should only be granted under the strongest showing, both of necessity, and of likelihood of attaining results. The prayer for a mandatory injunction will be denied.

■ There remains the issue of damages. Although the plaintiff prays for both compensatory and punitive damages, it is difficult in this case to make such a separation. In any event, it is doubtful whether punitive damages can ever be assessed against an employer for acts of an employee which were neither directed, participated in, or ratified by the employer. The evidence clearly shows that the employee's wrongful actions were in violation of his duties and his employer's instructions. While for the reasons stated above, the employers are required to make the plaintiff whole, because the duty violated was non-delegable, they may not be punished without any showing of intent or willfulness on their part. It is, however, appropriate to award punitive damages against the one who actually did the wrong, in this case the defendant Haugh. Punitive damages will be assessed against him in the sum of Two Thousand Five Hundred Dollars ($2,500.00).

Compensatory damages for a violation of civil rights in general must be more than nominal. Certainly, one who has been deprived of his right not to be discriminated against has suffered real and substantial injury. The evidence clearly shows that the plaintiff was upset and troubled by Haugh's actions. Although he had lived in racially mixed neighborhoods with no problems, suddenly he had the shocking experience of finding himself the victim of bigotry and intolerance. It was undoubtedly a very painful experience. To his credit, plaintiff did not take it lying down. He fought back, in a proper manner, in the courts. Taking legal action is expensive, both in actual cash outlays, and in the mental and nervous strain that litigants always undergo.

■ The Court feels, on the basis of the record as a whole, that the reasonable cost of these things to the plaintiff, which he is entitled to recover in this action is the sum of Five Thousand Dollars ($5,000.00) plus his reasonable attorney fees and expenses in the prosecution of this action. No evidence was offered bearing on the matter of attorney fees. If the parties cannot agree upon a stipulation as to the amount thereof, upon their so advising the Court, the matter will be set for hearing at which evidence may be offered, and the Court will thereafter fix the amount.

While the judgment for compensatory damages will be rendered against the defendants jointly and severally, it is clear that in law the liability for these damages is primarily upon the defendant Haugh, and secondarily only upon the defendant Company and the defendant Heinzeroth, who are entitled to a judgment over against the defendant Haugh for such sums as they actually pay to the plaintiff.

■ On February 22, 1977, well over two months since the trial of this matter, plaintiff filed a motion to open the record for the purpose of introducing into the record a copy of the February, 1977, edition of the "Toledo Realtor", which is published by the Toledo Board of Realtors. Defendants opposed the motion, stating the publication is and does not relate to the time period involved in the lawsuit. Since plaintiff did not comply with the Local Civil Rules by filing a memorandum in support of his motion, the Court could overrule the motion on this basis alone. However, the motion will be overruled because it does not relate to the time period involved and because it is immaterial to the issues herein.

*WHEREFORE, for the reasons stated, good cause therefor appearing, it is*

*ORDERED that the defendant JOHN HAUGH and any persons in active participation with him be, and hereby are, forever ENJOINED FROM:*

(1) refusing to make a loan or requiring different terms or conditions because of the race of the present or prospective owners, lessees, tenants, or occupants of other dwellings in the vicinity of the dwelling or dwellings in relation to which such loan or other service is to be made or given; and

(2) engaging in any acts or practices which have the purpose or effect of denying equal housing opportunities because of race, color, religion, sex or national origin;

*and it is*

*FURTHER ORDERED that the plaintiff have judgment against the defendant JOHN HAUGH in the sum of Two Thousand Five Hundred Dollars ($2,500.00) punitive damages; and it is*

*FURTHER ORDERED that the plaintiff have judgment against the defendants OTTO G. HEINZEROTH MORTGAGE COMPANY, OTTO G. HEINZEROTH, and JOHN HAUGH, JOINTLY and SEVERALLY, in the sum of Five Thousand Dollars ($5,000.00), plus a sum equal to his reasonable attorney fees and expenses in the prosecution of this action; and it is*

*FURTHER ORDERED that the defendants OTTO G. HEINZEROTH MORTGAGE COMPANY and OTTO G. HEINZEROTH, JOINTLY and SEVERALLY, have judgment against the defendant JOHN HAUGH in an amount equal to any sum or sums that they are either of them pay to the plaintiff to apply upon the judgment granted to him herein.*

IT IS SO ORDERED.