258 F.3d 1127 (9th Cir. 2001)
 EMMA MARY ELLEN HOLLEY; DAVID HOLLEY; MICHAEL HOLLEY, A MINOR; BROOKS BAUER, INDIVIDUALLY AND ON BEHALF OF THE GENERAL PUBLIC, PLAINTIFFS-APPELLANTS,
v.
GROVE S. CRANK, SR., INDIVIDUALLY, DBA TRIAD REALTORS; TRIAD INC., INDIVIDUALLY, DBA TRIAD REALTORS DEFENDANTS, AND DAVID MEYER, INDIVIDUALLY AND IN HIS CAPACITY AS PRESIDENT AND DESIGNATED OFFICER/BROKER OF TRIAD, INC., DBA TRIAD REALTORS, DEFENDANT-APPELLEE.
 No. 99-56611
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted March 5, 2001--Pasadena, California
Filed July 31, 2001
 
 [Copyrighted Material Omitted]
 Counsel Elizabeth N. Brancart, Brancart & Brancart, Pescadero, California, for the appellants.
 Douglas G. Benedon, Benedon & Serlin, Woodland Hills, California, for the appellee.
 D.C. No. CV-98-07965-WMB-SHX; CV-97-08368-WMB-SHX Appeal from the United States District Court for the Central District of California William Matthew Byrne, Jr., Senior District Judge, Presiding
 Before: Procter Hug, Jr. and Betty B. Fletcher, Circuit Judges, and Susan Y. Illston, District Judge.*
 Hug, Circuit Judge
 In this case we must decide whether owners and officers of corporations may be held vicariously liable for an employee's violations of the Fair Housing Act (FHA). We conclude that they can. Although under general principles of tort law corporate shareholders and officers usually are not held vicariously liable for an employee's action, the criteria for the Fair Housing Act is different as liability is specified for those who direct or control or have the right to direct or control the conduct of another with respect to the sale of or provision of brokerage services to the sale of a dwelling. The decision of the district court is reversed.
 BACKGROUND
 Emma Mary Ellen Holley is African American, her husband David Holley, is Caucasian and their son, Michael Holley is African American. The Holleys allege that in October 1996, they visited Triad Realty's office in Twenty-Nine Palms, California where they met with Triad agent Grove Crank and inquired about listings for new houses in the range of $100,000 to $150,000. The Holleys allege that Crank showed them four houses in the area, all above $150,000. In mid-November 1996, the Holleys located a home on their own that happened to be listed by Triad. In response to the Holleys' inquiry about the home, Triad agent Terry Stump informed them that the asking price for the house was $145,000. The Holleys expressed interest in purchasing the home and offered to pay the asking price and to put $5,000 in escrow for the builder to hold the house until April or May 1997 when they closed escrow on their existing home.
 Stump told the Holleys that their offer seemed fair, as did the builder, Brooks Bauer, when Mrs. Holley called him with the same offer. Bauer did express, however, that the offer would have to go through Triad. Later, Stump called Mrs. Holley to tell her that more experienced agents in the office, one of whom was later identified as Grove Crank, felt that $5,000 was insufficient to get the builder to hold the house for six months. The Holleys decided not to raise their offer and Triad never presented the original offer to Bauer. One week later, Bauer inquired at Triad about the status of the Holleys' offer. Crank then allegedly used racial invectives in referring to the Holleys, telling Bauer that he did not want to deal with those "n-------" and called them a "salt and pepper team." The Holleys eventually hired a builder to construct a house for them and Bauer later sold his house for approximately $20,000 less than the Holleys had offered.
 Bauer and the Holleys filed a complaint on November 14, 1997, alleging that Crank and Triad violated federal and state fair housing laws. They later filed a separate action against David Meyer as officer/broker, president and owner of Triad, covering the same allegations and adding several new claims. The district court consolidated the two cases. The district judge, ruling on a Federal Rule of Civil Procedure 12(b)(6) motion, dismissed all of the claims except the FHA claim, on the grounds that they were barred by the applicable statutes of limitation. Plaintiffs have not appealed this ruling. With regard to the FHA claim, the district court granted the motion to dismiss Meyer in his capacity as an officer of Triad stating that any liability of Meyer as an officer of Triad would attach to Triad in that Plaintiffs have not urged theories that would justify reaching Meyer individually. Meyer than moved for summary judgment on the remaining FHA claim. The district court granted Meyer summary judgment on that claim, finding that, during the relevant time, the real estate license was issued to Triad, with Meyer as the designated corporate officer of Triad. Thus, the district court concluded that Crank's discriminatory acts could be imputed to Triad, but not to Meyer as an individual. The district court entered a Rule 54(b) certification of that judgment as final to allow this appeal, and stayed all remaining proceedings against Triad and Crank.
 ANALYSIS
 Title VIII of the Civil Rights Act of 1968, commonly known as the Fair Housing Act of 1968 (FHA), broadly prohibits discrimination in housing. 42 U.S.C. §§ 3601 et seq. An examination of the Act reveals a "broad legislative plan to eliminate all traces of discrimination within the housing field." Marr v. Rife, 503 F.2d 735, 740 (6th Cir. 1974). The FHA itself, however, does not limit or define who can be sued for discriminatory housing practices. The Department of Housing and Urban Development (HUD), the federal agency primarily assigned to implement and administer Title VIII, has developed regulations and guidelines, which this Court affords considerable deference, interpreting when liability attaches under the FHA. See Harris v. Itzhaki , 183 F.3d 1043, 1054 (9th Cir. 1999). Historically, HUD's regulations for administrative complaints have provided, in relevant part:
 A complaint may also be filed against any person who directs or controls, or has the right to direct or control, the conduct of another person with respect to any aspect of the sale . . . of dwellings or the provision of brokerage services relating to the sale[ ] of dwellings if that other person, acting within the scope of his or her authority as employee or agent of the directing or controlling person, is engaged, has engaged, or is about to engage, in a discriminatory housing practice. 24 C.F.R. §§ 103.20 (1999)[1] (emphasis added).
 The FHA provides two means of enforcing its provisions. Under §§ 3610(a), a person "aggrieved" may file a complaint with HUD, and the agency investigates and resolves the complaint's charges. If the administrative agency is unable to obtain compliance or concludes that judicial action is necessary to carry out the purposes of the Act, a civil suit may be commenced. 42 U.S.C. §§§§ 3610(e) & (g); 3612. The alternate route for obtaining redress under the FHA is pursuant to §§3613, which provides the right to file suit in a federal or state court without awaiting action by HUD. Thus, the two sections provide parallel remedies for the same prospective plaintiffs and courts have analyzed the provisions as alternate analogous remedies. See Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 105-8 (1979) (noting HUD's consistent treatment of the two provisions as alternative remedies to precisely the same prospective plaintiffs); see also Marr v. Rife, 503 F.2d at 739 (concluding that although the civil action provision fails to indicate the burden of proof to be applied, it would be anomalous for a different burden to apply under that section than is applied under §§ 3610). Accordingly, we look to HUD's relevant regulatory history for administrative complaints to help determine the scope of liability here.
 The district court found that as a matter of law Meyer could not be vicariously liable based on his position as president and officer/broker of Triad. We disagree. Considering the relevant HUD regulation quoted above, Meyer bears potential liability in his capacity as owner, president and officer/broker of the corporation. Additionally, our Court has recognized that the duty to obey the laws relating to racial discrimination under the FHA is non-delegable. Phiffer v. Proud Parrot Motor Hotel, Inc., 648 F.2d 548, 552 (9th Cir. 1980). Although officers and shareholders of a corporation generally enjoy immunity from liability for corporate acts, as a matter of furthering the compelling policy of the FHA and because this involves a non delegable duty, we conclude that a corporation and its officers may be held liable for their failure to ensure the corporation's compliance with the FHA, whether or not the officers directed or authorized the particular discriminatory acts that occurred.[2] While we recognize that holding a corporation and its officers responsible even though the acts of subordinate employees were neither directed nor authorized seems harsh punishment of an otherwise innocent employer, we agree with our sister Circuits in finding that preferable to leaving the burden on the innocent victim who felt the direct harm of the discrimination. See City of Chicago v. Matchmaker Real Estate Sales Center, Inc., 982 F.2d 1086, 1096-97 (7th Cir. 1992); Walker v. Crigler, 976 F.2d 900, 904-905 (4th Cir. 1992). The overriding societal priority of the FHA indicates that the owner has the power to control the acts of the agent and so must act to compensate the injured party and to ensure that similar harm will not occur again. When one of two innocent people must suffer, the one whose acts permitted the wrong to occur is the one to bear the burden. See Walker, 976 F.2d at 904.
 Meyer's Liability as Sole Owner and Officer of Triad
 The district court did not expressly address Meyer's liability as sole owner of Triad and Meyer maintains that Appellants did not sue Meyer as Triad's owner. The complaint against Meyer sued him for FHA violations in his individual capacity and as an officer and designated officer/broker of Triad. It does not appear that Meyer could be liable as an individual, as opposed to in his capacity as officer/broker and president of Triad, other than under a theory of vicarious liability as the owner of Triad, as there is no allegation that he directly participated in the discrimination. Accordingly, we address his potential liability as sole owner of Triad for FHA violations of employees.
 The duty to obey the laws relating to racial discrimination under the FHA is non-delegable. Phiffer, 648 F.2d at 552. In Phiffer, this court concluded that the owner of the Proud Parrot Motor Hotel Corporation was liable for the discriminatory conduct of his desk clerk even absent any evidence that the clerk acted under management's instruction. Id.[3] Although Phiffer involved an owner of a motel rather than a real estate corporation, the same rule is compelling here. Triad was directly and immediately involved in the sale of real estate involving the alleged violation. As the real estate agency that allegedly committed the unlawfully discriminatory acts in providing brokerage services for the sale of the property, Triad is connected to the discrimination even more directly than the hotel corporation owner in Phiffer. Our rule under Phiffer renders the sole owner of a corporation liable based on the non-delegable duty to obey the FHA and, thus, if Meyer owned Triad at the time of the discriminatory acts at issue, he cannot relinquish the responsibility for preventing such discrimination to another party. Accord Walker v. Crigler, 976 F.2d 900, 904 (4th Cir. 1992).
 In so ruling, we follow the lead of other federal circuit courts. The Seventh Circuit held a realty corporation and its sole shareholder vicariously liable for compensatory damages resulting from individual sales agents' FHA violations even though the sole shareholder had specifically instructed the agents not to discriminate and had not personally joined in any discriminatory acts. Matchmaker, 982 F.2d at 1096-98. Noting Walker's policy discussion, the Seventh Circuit agreed with the Fourth Circuit that " `we must hold those who benefit from the sale and rental of property to the public to the specific mandates of anti-discrimination law if the goal of equal housing opportunity is to be reached.' " Id. at 1096 (quoting Walker, 976 F.2d at 905). We also agree with this policy.
 Matchmaker concluded that as the sole owner of the corporation, the chief executive officer and the supervisor of the day-to-day operations of the corporation and its agents, the defendant should be personally liable for compensatory damages. Id. at 1098. We adopt this reasoning and, thus, remand to the district court to allow the Holleys the opportunity to try the issue of Meyer's ownership of Triad at the time of the alleged violations.[4] We agree with the Seventh Circuit that a principal cannot free itself of liability by delegating to an agent the duty not to discriminate. See id. at 1096.[5]
 While the evidence does not indicate that Crank acted with the approval or at the direction of Meyer, such a finding is not necessary to hold Meyer liable as the sole owner of Triad for breach of a non-delegable duty to comply with the FHA. See Marr v. Rife, 503 F.2d at 742. If Meyer solely owned the agency, he had at least the authority to control the acts of his salespersons, particularly in light of his position as president and officer/broker of Triad. As discussed above, this is enough, under the approach we adopt here and that adopted by a number of courts, to hold Meyer personally liable. Id.; Matchmaker, 982 F.2d 1086; Walker, 976 F.2d 900; Northside Realty Assoc. Inc. v. United States, 605 F.2d 1348, 1354 (5th Cir. 1979); United States v. Tropic Seas, Inc., 887 F.Supp. 1347, 1365 (D. Haw 1995); United States v. Youritan Constr. Co., 370 F.Supp. 643, 649 (N.D. Cal. 1973), modified as to relief and aff'd, 509 F.2d 623 (9th Cir. 1975).
 The same reasoning compels Meyer's potential liability in his capacity as president of the corporation. Perhaps more so than in his capacity as sole owner of the company, as an officer of the company he actually did direct or control, or had the right to direct or control, the conduct of the salespersons who allegedly discriminated against the Holleys with respect to the sale of real estate. While we recognize that corporate officers and shareholders are generally shielded from personal liability, we agree with the Seventh Circuit that"where common ownership and management exists, corporate formalities must not be rigidly adhered to when inquiry is made of civil rights violations." Matchmaker, 982 F.2d at 1098. Thus, under relevant HUD regulatory history, and because the duty not to discriminate is a non-delegable one, we join other courts in holding that officers can be individually liable for discriminatory acts of corporate employees under their management and control. See e.g., Tropic Seas, 887 F.Supp. at 1365; Northside, 605 F.2d at 1354 (holding president and vice-president of real estate corporation accountable for discriminatory acts of their agents, "whether or not the officers directed or authorized the particular discriminatory acts that occurred").
 Our decision recognizes the duty under the FHA as non-delegable, furthering the purposes of the FHA. Moreover, as discussed below, Meyer may have neglected his duties to supervise salespeople in their real estate transactions, which included his responsibility to ensure that they follow federal and state anti-discrimination laws. Meyer's Responsibilities as Designated Officer/Broker of Triad
 As designated officer/broker of the company, Meyer was responsible for the supervision and control of the activities conducted on behalf of the corporation by its officers and employees in the performance of acts for which a real estate license is required. Cal. Bus. & Prof. Code §§ 10159.2(a). Under California law, a real estate broker is required to exercise reasonable supervision over the activities of his or her salespersons, including familiarizing salespersons with the requirements of federal and state laws relating to the prohibition of discrimination. 10 Cal. Code Reg. §§ 2725(f). His failure to do so also bolsters the contention that he should be held personally liable for unlawful discriminatory acts of Triad's salespersons.
 Although federal law governs the issue of agency under the FHA, the California licensing scheme is instructive here in discerning Meyer's supervision and control over Triad sales activity. California law provides that "[n]o acts for which a real estate license is required may be performed for, or in the name of, a corporation" unless the corporation has designated an officer of the corporation to serve as the officer/broker of the company. Cal. Bus. & Prof. Code §§§§ 10158 & 10211; 10 Cal. Code Reg. §§ 2740. As a real estate salesperson for Triad, acting under the corporate license, Crank sold real estate under the supervision of the designated officer/broker. Cal. Bus. & Prof. Code §§ 10159.2(a). Technically, the licensed broker is the corporation, however, as designated broker, under California law, Meyer was personally responsible for this supervision.
 The district court interpreted this to mean that Meyer could be personally liable only if Crank operated under a license that Meyer held in his personal capacity rather than as an officer of Triad. Based on the analysis and policy discussed above and the California real estate licensing requirements, we disagree. The designated officer/broker of a real estate corporation in California is responsible for the"supervision and control of the activities conducted on behalf of the corporation by its officers and employees . . . including the supervision of salespersons licensed to the corporation in the performance of acts for which a real estate license is required." Cal. Bus. & Prof. Code §§ 10159.2(a).
 The state regulations implementing these real estate licensing laws require that a broker exercise "reasonable supervision" over the activities of salespersons. The regulations define such reasonable supervision as including establishment of "policies, rules, procedures and systems to review, oversee, inspect and manage" transactions requiring a real estate license and familiarizing salespersons with the requirements of federal and state laws prohibiting discrimination. 10 Cal. Code Reg. §§ 2725. Meyer does not dispute that he was the designated officer/broker of Triad at the time of the alleged discrimination. Meyer testified that he understood his responsibilities as designated officer/broker at Triad to include making sure that Triad's agents "were acting lawfully, that contracts were negotiated lawfully" and that people were treated lawfully.
 Meyer's undisputed responsibility to supervise Triad's salespersons in real estate transactions places him squarely within HUD's regulatory history allowing complaints against any person who has the right to direct or control the conduct of another in any aspect of the sale of or provision of brokerage services to the sale of a dwelling. See 24 C.F.R. §§ 103.20 (1999). Meyer argues that this regulation is irrelevant here as it applies to administrative complaints rather than civil actions. The Supreme Court, however, has interpreted the statute authorizing an administrative proceeding and that authorizing the filing of a civil action as providing parallel remedies to the same prospective plaintiffs. Gladstone, 441 U.S. at 105-08. The Court inferred the congressional intent to provide all victims of Title VIII violations two alternative mechanisms to "seek redress: immediate suit in federal district court or a simple, inexpensive, informal conciliation procedure, to be followed by litigation should conciliation efforts fail." Id. at 104. This judicial interpretation of the two statutes renders the regulation for administrative complaints highly relevant to the instant civil action.
 Although the federal courts have declined to allow state law to control rulings on agency for purposes of FHA violations, consideration of the state licensing scheme is appropriate here to determine Meyer's involvement or omissions in the alleged discriminatory acts.[6] As both president and designated officer/broker of Triad, Meyer had a duty to prevent unlawful discrimination such as that which is alleged of Triad salesperson Crank. If Meyer breached that duty to supervise then he should be held accountable for such an omission even absent direct involvement or authorization of Crank's alleged discriminatory conduct.
 We disagree with the district court's ruling that Meyer could only be liable here if Crank acted under the authority of a license Meyer held personally rather than as a corporate officer of Triad. His responsibilities as designated officer/ broker under Triad's corporate license, by mandate of state law, required him to direct and control the conduct of Triad salespersons with respect to the sale of homes and the provision of brokerage services relating to the sale of homes. If Meyer was indeed an officer of the corporation and the designated officer/broker of Triad Realty at the time of the alleged conduct, it is difficult to see how he could be excused from the obligation imposed by the FHA to prohibit discrimination in the housing field.
 CONCLUSION
 In light of the evidence that Meyer was (1) an officer of Triad Realty at the time of the alleged discriminatory acts; (2) the designated broker of the corporation who enabled it to engage in the business of selling real estate; and (3) the sole shareholder of the corporation at the time of the alleged discrimination, we disagree with the district court's conclusion that as a matter of law Meyer cannot be individually liable for damages resulting from the alleged FHA violations. Accordingly, we reverse and remand this case to the District Court for further proceedings consistent with this opinion.
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 *
 Honorable Susan Y. Illston, United States District Judge for the Northern District of California, sitting by designation.
 
 
 [1]
 The current version of this regulation replaces this language with an apparently more user-friendly provision instructing that a person should notify HUD for assistance in filing a claim if they believe there has been discrimination against them in any activity related to housing because of race, color, religion, national origin, sex, disability, or the presence of children under the age of 18 in a household. 24 C.F.R.§§ 103.10-20. Absent any indication that HUD intended to narrow liability under the new regulations, we find the previous language instructive regarding the potential scope of liability.
 
 
 [2]
 Our decision applies only to vicarious liability for compensatory damages. We do not address vicarious liability for punitive damages as the issue is not before us.
 
 
 [3]
 The court did note that the magistrate had found that the desk clerk's actions reflected established policy of the Proud Parrot. Still, the court's language regarding the non-delegable duty to follow the law is clear and instructive.
 
 
 [4]
 Meyer started Triad in 1974 and was the sole stockholder from 1978 until around February 1995 when he claims he transferred ownership to Crank. Meyer concedes, however, that there is no documentation reflecting this transfer and that he remained the president and designated officer/ broker of the company until 1998. When asked about the circumstances of the transfer of ownership, Meyer described having conversations with Crank in which they decided Crank would carry on with the company, take over financial responsibility and day-to-day operations. The only "evidence" that this transfer of ownership occurred in 1995 is "Document 2000" -the minutes of a meeting in April 1995 making Crank vice-president. Meyer claims that this assignment was associated with the transfer of ownership, despite Meyer remaining president of the company until 1998, and keeping an office there that he used daily until 1997. The Holleys presented sufficient evidence to entitle them to a trial regarding Meyer's liability as owner of Triad at the time of the alleged discrimination. Appellants also allege that Triad pays its taxes under Meyer's identification number. Furthermore, Meyer executed Crank's renewal of salesperson's license in March 1998 indicating Meyer was the employing broker. At the very least under these circumstances, the alleged undocumented transfer of the corporation is questionable as there would seem to be legal, financial and tax consequences to such a transfer yet there is no explanation or documentation as to how anything was carried out. As such, the issue is one of credibility and fact. Accordingly, we remand to the district court to determine whether Meyer owned Triad during the time at issue and is therefore liable for the agent's discriminatory acts.
 
 
 [5]
 The Sixth Circuit also held that a real estate agency owner should be vicariously liable for compensatory damages resulting from salespersons' FHA violations even though there was no evidence that the agent acted with the approval or at the direction of the owner. The court reasoned that the owner of the agency had at least the power to control the acts of his salespersons. Marr v. Rife, 503 F.2d 735, 742 (6th Cir. 1974).
 
 
 [6]
 Meyer argues that the California real estate licensing law is irrelevant here as California courts have interpreted it as extending a disciplinary scheme rather than creating a private right of action against a designated broker. Appellants here do not attempt to bring a private action under the California statute, rather they argue that the statute is relevant to determining Meyer's responsibilities of supervision in a claim brought under the FHA.