UNITED STATES of America,
Plaintiff,

v.

QUALITY BUILT CONSTRUCTION,
INC. f/k/a Dawn Construction, Inc.;
William E. Dansey, Jr.; and Hite/
MSM, P.C. Defendants.

No. 4:00–CV–194–BO(3).

United States District Court,
E.D. North Carolina,
Eastern Division.

Jan. 7, 2003.

R.A. Renfer, Jr., Asst. U.S. Attorney, Office of U.S. Attorney, Raleigh, Scott Moore, U.S. Department of Justice, Civil Rights Division, Washington, DC, for United States of America plaintiff.

Christopher A. Page, Young, Moore & Henderson, John M. Nunnally, Ragsdale Liggett, Raleigh, for William E. Dansey, Hite/MSM, P.C., Quality Built Construction, Inc. fka Dawn Construction, Inc., defendants.

## ORDER

TERRENCE WILLIAM BOYLE, Chief Judge.

This case is before the Court on Plaintiff's Motion for Partial Summary Judgment as to Liability and Defendant Hite's Motion for Partial Summary Judgment as to Punitive Damages.

## FACTS

Plaintiff, the United States of America, filed the underlying complaint against Defendants Quality Built Construction, Inc., f/k/a Dawn Construction, Inc. ("Quality Built"); William E. Dansey, Jr. ("Dansey"); and Hite/MSM, P.C. ("Hite") alleging violations of the Fair Housing Act,

Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601–3619 ("the Fair Housing Act" or "the Act"). Plaintiff claims that Defendants failed to design and construct the Breezewood Condominiums and Hyde Park Apartments in Greenville, North Carolina in compliance with the Act because the properties are not accessible to handicapped persons.[1] The properties at issue were built by Quality Built, and Dansey is the primary stockholder and president of that corporation. Hite provided architectural design services for the interiors of the Breezewood and Hyde Park units.

## DISCUSSION

A court may grant summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden to show the court that there is an absence of a genuine issue concerning any material fact and that the non-moving party cannot prevail. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. In order to survive the motion, the non-moving party must then show that there is "evidence from which a jury might return a verdict in his favor." *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. Conclusory allegations are not sufficient to defeat a motion for summary

judgment. *Id.* at 249, 106 S.Ct. 2505. The court must accept all of the non-moving party's evidence as true and will view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 255, 106 S.Ct. 2505.

Under the Fair Housing Act, it is unlawful:

(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of— ·

(A) that buyer or renter . . . .

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

(A) that person . . . .

42 U.S.C. § 3604(f). The Act defines discrimination to include:

(C) [I]n connection with the design and construction of covered multifamily dwellings . . . a failure to design and construct those dwellings in such a manner that—

(i) the public use and common use portions of such dwelling are readily accessible to and usable by handicapped persons;

(ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

(iii) all premises within such dwellings contain the following features of adaptive design:

1. With respect to the Breezewood property, the Court is concerned only with the ground-floor units in Breezewood phases I and II. With respect to the Hyde Park property, the Court is concerned only with the 24 ground-floor units specified in paragraph thirteen of Plaintiff's First Amended Complaint. For purposes of this Order, all references to the properties are limited to these particular units.

(I) an accessible route into and through the dwelling;

(II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

(III) reinforcements in bathroom walls to allow later installation of grab bars; and

(IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3)(C).

## A. Plaintiff's Motion for Partial Summary Judgment as to Liability

Plaintiff contends that it is entitled to summary judgment against Defendants on the issue of liability. According to Plaintiff, the uncontested facts of this case demonstrate that Defendants failed to design and construct the Breezewood and Hyde Park units in accordance with the requirements of 42 U.S.C. § 3604(f)(3)(C). In response, Defendants contend that several material questions of fact exist with respect to the issue of liability. The Court will first consider Defendants' arguments, then determine whether Plaintiff is entitled to summary judgment under the facts of this case.

### 1. Defendants' Arguments in Opposition to Summary Judgment

#### a. Standing

As an initial matter, Quality Built and Dansey contend that there are issues of material facts regarding whether the United States has standing to bring this suit. The Act provides for enforcement by the Attorney General:

Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has denied any of the rights granted by this subchapter and such denial raises an issue of general public importance . . .

42 U.S.C. § 3614(a). Defendants Quality Built and Dansey argue that, if the properties do violate the Act, any violation is unintentional and does not constitute a pattern or practice of resistance to the full enjoyment of rights. Furthermore, they contend Plaintiff has not offered evidence to show that this case involves points of law "of major significance" or that the decision in the case "will constitute a precedent for a large number of establishments," so as to raise an issue of general public importance. *United States v. Hunter*, 459 F.2d 205, 218 (4th Cir.1972) (citing 110 Cong. Rec. 12713 (June 4, 1964)).

However, Defendants' arguments are unpersuasive for two reasons. First, Defendants' intent is not relevant to the Court's determination of whether a pattern or practice of discrimination exists. In *Hunter*, the Fourth Circuit explained that a pattern or practice is "more than an isolated or accidental instance of conduct violative of the Act, but rather . . . an intentional, regular, or repeated violation of the right granted by the Act." *Id.* at 217. The alleged violations in this case consist of numerous features planned and constructed in over one hundred units at two separate developments. The Court finds that the facts asserted by the United States, if shown, clearly indicate a regular or repeated violation of the protections afforded by the Act. Second, the Court finds that the case plainly involves an "issue of general public importance." *See United States v. Hartz Constr. Co., Inc.*, No. 97 C 8175, 1998 WL 42265, at *2 (N.D.Ill.1998) ("It is of course obvious that housing that is inadequately designed and constructed to serve persons with disabilities denies that class of persons rights granted by the Act—and . . . that 'denial

raises an issue of general public importance.' ").

### b. *Affirmative Defenses*

 Defendants Quality Built and Dansey next argue that Plaintiff's claim is barred by equitable estoppel and laches. Defendants base both defenses on the assertion that local HUD officers reviewed and approved the plans for Breezewood Condominiums pursuant to Defendants' application for FHA-insured mortgage financing. In asserting equitable estoppel, Quality Built and Dansey argue that there are material facts at issue, including whether they reasonably relied upon the government's approval of the building plans, whether HUD wrongfully failed to monitor compliance with the accessibility guidelines, whether HUD gave adequate notice of the guidelines to Defendants, and whether the delay in bringing the suit was justifiable. However, the Fourth Circuit has refused to invoke equitable estoppel against the United States in the absence of affirmative misconduct. *See Maryland Department of Human Resources v. Department of Agriculture,* 976 F.2d 1462, 1484 n. 24 (4th Cir.1992). Because Defendants have not produced any evidence to support a finding of affirmative misconduct, equitable estoppel is not available as a defense.

 Likewise, laches is unavailable as a defense to Plaintiff's action. Laches is an affirmative defense which requires the defendant to prove (1) lack of diligence by the plaintiff, and (2) prejudice to the defendant. *See White v. Daniel,* 909 F.2d 99, 102 (4th Cir.1990). However, "the United States is not . . . subject to the defense of laches in enforcing its rights." *United States v. Geraldson,* 882 F.Supp. 911, 913 (D.S.D.1995) (citing *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940)). *See also United States v. Melenyah,* 16 F.3d 413, 1994 WL

22469 (4th Cir.1994) (unpublished table decision) (holding that the government is not subject to laches); *United States v. Alvarado,* 5 F.3d 1425, 1427 (11th Cir.1993) (finding that the United States is exempt from the consequences of laches).

Even if the doctrine of laches were applicable in the case at bar, Defendants cannot carry their burden of proving a lack of diligence. There is no evidence before the Court indicating that Plaintiff was aware of the violations but unreasonably delayed notifying Defendants or filing suit. *See White,* 909 F.2d at 102 (stating that lack of diligence for a laches defense is shown by an inexcusable or unreasonable delay in filing suit).

### c. *Defendants' Reliance on their Architect's Assurances*

 Dansey and Quality Built seek to avoid liability by arguing that, because they employed Hite, a professional architecture firm, they should be able to rely upon Hite's expertise and certification that the plans complied with building requirements. In *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.,* 3 F.Supp.2d 661 (D.Md.1998), the court rejected an identical argument that a party must be involved in both the design and construction to be liable under the Act. The court held that:

> When a group of entities enters into the design and construction of a covered dwelling, all participants in *the process as a whole* are bound to follow the FHAA. To hold otherwise would defeat the purpose of the FHAA to create available housing for handicapped individuals and allow wrongful participants in the design and construction process to remain unaccountable. In essence, any entity who contributes to a violation of the FHAA would be liable.

*Id.* at 665 (emphasis in original). The court further explained that where an architect draws noncomplying plans, which

the builder follows, both the architect and builder are liable as "wrongful participants." *Id.* at 655 n. 2; *see also Hartz,* 1998 WL 42265, at *1. Therefore, Quality Built and Dansey are not shielded from liability because Hite was responsible for the designing the units.

### d. *Defendant Dansey's Liability*

■ Finally, Defendant Dansey contends that there is a genuine issue of material fact as to whether he designed or constructed the properties, so as to face liability under the Act. First, Dansey argues that, in his individual capacity, he only briefly owned the real estate on which the properties were built. Second, he contends that Plaintiff has not alleged facts to support a finding that the corporate form should be disregarded in this case.

Dansey admits that he is the president of Quality Built and its predecessors in interest. He further admits that, at the time the properties were constructed, he owned the land upon which Hyde Park was built and owned the majority of the property upon which Breezewood was constructed. (Dansey Aff. ¶¶ 2, 7). The evidence before the Court shows that he was listed as the owner on numerous applications for building permits and certificates of occupancy for both developments. Moreover, Dansey states that he was a "shareholder involved in the development and/or construction of Breezewood" and a "partner involved in the development and/or construction of Hyde Park." (Dansey Answer to First Am. Compl. ¶¶ 7–8). Given that "all participants in *the process as a whole* are bound to follow the FHAA," *Rommel Builders,* 3 F.Supp.2d at 665, the Court finds that Dansey is a proper party under the Act. *See also Holley v. Crank,* 258 F.3d 1127, 1133–34 (9th Cir. 2001) (holding that corporate officers can be individually liable for the discriminatory acts of corporate employees).

### 2. *Plaintiff's Evidence in Support of Summary Judgment*

■ Having rejected Defendants' arguments in opposition to summary judgment, the Court must now determine whether Plaintiff is entitled to judgment as a matter of law on the issue of liability. In doing so, the Court must first determine what evidence is relevant to the issue of Defendants' liability. Defendants Quality Built and Dansey claim that whether the alleged violations were accidental or intentional is a question of fact that precludes summary judgment. However, as discussed above, intent is not a required element of a suit under the Act. *See* Magistrate Order dated April 1, 2002 at 6 (affirmed by the undersigned on July 26, 2002). *See also Betsey v. Turtle Creek Associates,* 736 F.2d 983, 986 (4th Cir. 1984) (stating that racial discrimination under the Fair Housing Act can be shown by discriminatory intent or discriminatory impact); *Davis v. New York City Hous. Auth.,* 278 F.3d 64, 81 (2nd Cir.2002) ("To establish a violation of the FHA, a plaintiff need not show discriminatory intent but need only prove that the challenged practice has a discriminatory effect."). Therefore, the only question relevant to Defendants' liability is whether the properties were designed and constructed to be accessible to handicapped persons, as required by the Act.

### a. *42 U.S.C. § 3604(f)(3)(C)(i)*

Plaintiff first contends that Defendants Quality Built and Dansey violated 42 U.S.C. § 3604(f)(3)(C)(i) because the public and common use areas of the properties are inaccessible to handicapped persons.[2]

---

**2.** Plaintiff concedes that Hite was only responsible for the design of the interiors of the units. Therefore, Plaintiff does not seek summary judgment as to Hite for violations of 42 U.S.C. § 3604(f)(3)(C)(i).

The inaccessible features of the Breezewood property include the following: (1) only one of the fifteen buildings has a curb ramp from the parking lot to the walkway; (2) there are no compliant accessible parking spaces; (3) the mailboxes are surrounded by a six-inch curb and no curb ramp exists; (4) the pool area is not served by a curb ramp and the gate entrance handle requires grasping and twisting; (5) the pool bathrooms are not accessible because of a 4½ inch step at the entrance and a lack of clear space in the doorway or interior; and (6) the primary entrances to the units have door knobs that require grasping and twisting. With respect to the Hyde Park property, the inaccessible features include the following: (1) each unit is on a breezeway which requires a six-inch step up; (2) only one of six buildings has a curb ramp from the parking lot to the walkway; (3) the designated handicapped parking space does not have an sufficiently wide access aisle to allow space to get from a car to the sidewalk; (4) the mailboxes are surrounded by a six-inch curb and no curb ramp exists; and (5) the primary entrances to the units have door knobs that require grasping and twisting.

Plaintiff's allegations are supported by expert testimony and photographs. In addition, Quality Built and Dansey concede that the primary entrance doors are not equipped with usable hardware. (Quality Built Admis. ¶ 15; Dansey Admis. ¶ 11). To counter Plaintiff's allegations, Dansey and Quality Built offer Dansey's statement that, based on his personal experience, he "believe[s] that the public use and common use portions of the subject properties are readily accessible to and usable by handicapped persons." (Dansey Aff. ¶ 22). Defendants do not challenge Plaintiff's evi-

dence regarding the location of the mailboxes, the lack of curb ramps at the mailboxes, lack of curb ramps at the pool, or the measurements of the pool bathroom facilities. Instead, they argue that these common areas are accessible in their current form.

The Fair Housing Accessibility Guidelines ("HUD Guidelines") provide specific characteristics and features required for accessible public and common areas. *See* Fair Housing Accessibility Guidelines, 56 Fed.Reg. 9472, 9504–05 (March 6, 1991).[3] Plaintiff has provided evidence, including measurements and photographs, showing violations of these specifications. In response, Defendants Quality Built and Dansey have not come forward with alternative measurements or any other evidence to show that a triable issue of fact exists. The Court therefore grants Plaintiff's motion for summary judgment as to liability for violations of § 3604(f)(3)(C)(i) as to Defendants Quality Built and Dansey.

#### b. *42 U.S.C. § 3604(f)(3)(C)(ii)*

 Plaintiff contends that the doors into and within the units are not sufficiently wide to comply with § 3604(f)(3)(C)(ii) of the Act. The HUD Guidelines provide that, "[w]ithin individual dwelling units, doors intended for user passage through the unit which have a clear opening of at least 32 inches nominal width when the door is open 90 degrees, measured between the face of the door and the stop, would meet [the Act's] requirement." 56 Fed.Reg. at 9506.

Defendants admit that the bathroom doors, bedroom doors, patio doors, and doors to the closets and storage areas have a clear width of thirty inches or less. (Hite Admis. ¶¶ 6, 29; Dansey Admis.

**3.** The HUD Guidelines were issued by the Department of Housing and Urban Development ("HUD") pursuant to § 804(f)(5)(C) of the Act, which directs HUD to provide technical assistance in implementing the requirements of the Act. *See* 56 Fed.Reg. at 9499.

¶¶ 12–16; Quality Built Admis. ¶¶ 16–18). Defendants Quality Built and Dansey argue that accessibility is a relative term and the present width of the doors is sufficient. However, the undisputed facts before the Court indicate that the widths of the unit doors are thirty inches or less, and in some cases are as narrow as twenty-two inches. Accordingly, the Court grants Plaintiff's motion for summary judgment as to liability for violations of § 3604(f)(3)(C)(ii) as to Quality Built, Dansey, and Hite.

### c. 42 U.S.C. § 3604(f)(3)(C)(iii)(I)

■ Plaintiff next argues that Defendants violated § 3604(f)(3)(C)(iii)(I) of the Act by failing to provide an accessible route into and through the units at Breezewood and Hyde Park. Under the HUD Guidelines, accessible routes into and through dwelling units exist where: (1) a minimum clear width of 36 inches is provided; (2) changes in level between 1/4 and 1/2 of an inch are beveled with a slope; (3) changes in level over 1/2 of an inch are ramped or have other means of access; (4) exterior door thresholds, including sliding glass door tracks, are no higher than 3/4 of an inch; and (5) the exterior surface is no more than 1/2 of an inch below the interior floor level at the primary entry door. 56 Fed.Reg. at 9507.

The evidence before the Court shows, and Defendants concede, that there is a four-inch step at the front door to each unit at Breezewood and Hyde Park. (Quality Built Admis. ¶¶ 14, 15; Dansey Admis. ¶¶ 10, 11). The Court also has before it the testimony of Plaintiff's expert, Phillip Zook, who examined the units and found that the inside thresholds of the patio doors at Breezewood and Hyde Park exceed 3/4 of an inch and are not beveled. (Zook Decl. ¶¶ 12, 19). In the 1140–square–foot Breezewood center unit, the width of the passage into the tub/toilet portion of the bathroom is only twenty-eight inches. In the 1330–square–foot Breezewood end unit, the utility room is not sufficiently wide for wheelchair passage between the washer/dryer and the opposing wall. (Zook Decl. ¶ 12). At Hyde Park, the units have a four-inch step up to the storage room door. (Zook Decl. ¶ 19). Plaintiff's expert concluded that the inadequate door widths inside the units at both properties impede accessibility. (Zook Decl. ¶¶ 12, 19).

Defendants Quality Built and Dansey contend that the units are accessible and usable in their current form but fail to provide the Court with evidence to challenge Plaintiff's claims or to show that Zook's measurements are incorrect. Dansey and Quality Built rely upon Defendant Dansey's conclusory statement that he "believe[s] that the ground-floor units in the subject properties contain an accessible route into and through the dwellings." (Dansey Aff. ¶ 24). As noted above, conclusory allegations are not sufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Therefore, the Court finds that Defendants have failed to present evidence of a genuine factual dispute as to the existence of an accessible route into and through the units. The Court grants Plaintiff's motion for summary judgment as to liability for violations of § 3604(f)(3)(C)(iii)(I) as to Quality Built, Dansey, and Hite.

### d. 42 U.S.C. § 3604(f)(3)(C)(iii)(II)

■ Similarly, Defendants fail to demonstrate any issues of material fact with respect to Plaintiff's claim that the placement of light switches, electrical outlets, and thermostats violates § 3604(f)(3)(C)(iii)(II). In his declaration, Zook states that both receptacles in the outlets in the Breezewood units are less than fifteen inches above the floor and the thermostat is sixty-one inches above the floor. (Zook Decl. ¶ 13). Additionally, ap-

proximately one in three light switches is located more than forty-eight inches above the floor. (Zook Decl. ¶ 13). In the Hyde Park units, both receptacles in the outlets are less than fifteen inches above the floor, and the thermostat is 57½ inches above the floor. (Zook Decl. ¶ 20). Defendants concede that the lower plug of one or more outlets in the Breezewood and Hyde Park units is less than fifteen inches off of the floor. (Quality Built Admis. ¶ 21; Dansey Admis. ¶ 17).

The HUD guidelines provide that switches, outlets, and thermostats should be located "no higher than 48 inches, and no lower than 15 inches, above the floor." 56 Fed.Reg. at 9507. Defendants do not submit evidence to challenge Zook's measurements, nor do they present evidence of alternative compliance. Instead, Defendants argue that fixtures in these positions are accessible given the relative meaning of the term. The Court finds that the Defendants' mere conclusory assertions do not create an issue of material fact, and the Court grants Plaintiff's motion for summary judgment as to liability for violations of § 3604(f)(3)(C)(iii)(II) as to Quality Built and Dansey.

 Defendant Hite contends that, although it did provide general and structural drawings for the interior units at Breezewood and Hyde Park, it was not responsible for the specific positions of outlets, switches, and thermostats. Therefore, Hite argues that it should not be held liable for any violations related to those features. Hite stated in its deposition that the locations, but not height, of electrical outlets and switches were reflected in its designs. (Hite Dep. at 142). The thermostats were not shown in the plans at all. (Hite Dep. at 142). However, Hite placed its seal and certification on the design plan pages for the interior units at Breezewood and Hyde Park. (Hite Dep. at 106–08). As the party responsible for the design of the interior units, Hite's failure to specify compliant locations contributed to the inaccessible outlets, switches, and thermostats. As Hite does not dispute Plaintiff's factual allegation that the outlets, switches, and thermostats are in non-compliant locations, the Court also grants Plaintiff's motion for summary judgment as to liability for violations of § 3604(f)(3)(C)(iii)(II) as to Hite.

e. *42 U.S.C. § 3604(f)(3)(C)(iii)(III)*

 Plaintiff contends that the bathrooms walls are not reinforced to allow for later installation of grab bars, in violation of § 3604(f)(3)(C)(iii)(III). Plaintiff offers expert testimony that the architectural plans for Breezewood and Hyde Park do not show reinforcements in the bathroom walls for the later installation of grab bars. (Zook Decl. ¶¶ 14, 21). Hite concedes that the designs do not provide for reinforcements in the bathroom walls. (Hite Admis. ¶ 12). Defendants Quality Built and Dansey argue that there are factual disputes with respect to this matter. To support this claim, they offer Dansey's statement that he "believe[s] that the bathroom walls and studs in the bathrooms were built to allow for later installation of grab bars." (Dansey Aff. ¶ 26). However, Dansey and Quality Built provide no substantive evidence to support this assertion. Moreover, because Hite concedes that the plans did not provide for reinforcements and because Quality Built and Dansey claim to have relied on Hite's design, Defendants have not demonstrated that a triable issue of fact exists with respect to this matter. Accordingly, Plaintiff's motion for summary judgment as to liability for violation of § 3604(f)(3)(C)(iii)(III) is granted as to Quality Built, Dansey, and Hite.

f. *42 U.S.C. § 3604(f)(3)(C)(iii)(IV)*

 Finally, Plaintiff contends that the properties violate § 3604(f)(3)(C)(iii)(IV)

because Defendants failed to design and construct usable kitchens and bathrooms in the units. The HUD Guidelines clarify this requirement by providing specific minimum dimensions for clear space and approach space in kitchens and bathrooms. *See* 56 Fed.Reg. at 9510–12. The Guidelines provide that usable kitchens and bathrooms require: (1) a clear floor space at least 30 inches by 48 inches that allows a parallel approach by a person in a wheelchair at the range or cooktop and kitchen sink; (2) sufficient maneuvering room outside the swing of the door so that a person using a wheelchair can enter the bathroom and have enough space to close the door; and (3) a clear floor area around bathroom fixtures of 48″ by 66″, 48″ by 56″, or 56″ by 60″. *Id.*

In both the one-bedroom and two-bedroom units at Hyde Park, there is less than 30 inches by 48 inches of clear floor space parallel to and centered on the sink in the kitchen. (Zook Decl. ¶ 22; Hite Admis. ¶ 33). Similarly, in three of the four floorplans at Breezewood, there is less than 30 inches by 48 inches of clear floor space parallel to and centered on the sink in the kitchen. (Zook Decl. ¶ 15). Quality Built admits that toilets in the master bathrooms at Breezewood do not have a 48″ by 66″, 48″ by 56″, or 56″ by 60″ clear floor space for a front approach. (Quality Built Admis. ¶ 24). Measurements provided by Plaintiff's expert show that in the two-bedroom units at Hyde Park, the bathrooms have less than 30 inches by 48 inches of clear floor space parallel to and centered on the sink. (Zook Decl. ¶ 22). In addition, Plaintiff's measurements show that, with the exception of the 1330–square–foot unit, the bathrooms of the Breezewood units do not conform to the measurements set forth in the HUD guidelines and have insufficient space for a person in a wheelchair to maneuver. (Zook Decl. ¶ 15). The bathroom doors in all of the units have a clear width

of twenty-two inches or less. (Zook, Decl. ¶¶ 11, 18). Hite's admissions indicate that, in the two-bedroom Hyde Park units, one of the bathrooms does not have a clear floor space of 30 inches by 48 inches parallel to and centered on the sink and one of the bathrooms does not have sufficient space for a person in a wheelchair to maneuver around. (Hite Admis. ¶¶ 33, 42).

In response, Quality Built and Dansey argue that "the plaintiff's experts measurements are wrong; the bathrooms and kitchens are large enough so that an individual in a wheelchair can maneuver about the space." (Dansey Aff. ¶ 30). Plaintiff has provided specific measurements showing that the properties fail to provide at least one bathroom in each unit that is accessible and usable in accordance with the Act. While Defendants Quality Built and Dansey state that they disagree with the measurements, they have not provided alternative measurements or other evidence to support their contention. Therefore, Defendants have failed to show that there is an issue of material fact with regard to this issue, and Plaintiff's motion for summary judgment as to liability for violations of § 3604(f)(3)(C)(iii)(IV) is granted as to Quality Built, Dansey, and Hite.

B. *Defendant Hite's Motion for Partial Summary Judgment*

■ The Court now considers Defendant Hite's Motion for Partial Summary Judgment. Hite moves the Court to grant summary judgment in its favor on the issue of punitive damages and civil penalties. The Fourth Circuit has held that punitive damages are recoverable under the Fair Housing Act "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Pum-*

*phrey v. Stephen Homes, Inc.,* 110 F.3d 60, 1997 WL 135688, at *2 (4th Cir.1997) (unpublished table decision) (citing *Asbury v. Brougham,* 866 F.2d 1276, 1282 (10th Cir. 1989)). Hite contends that it was unaware of the requirements of the Act when designing the properties and asserts that there is no evidence that it acted intentionally, willfully, or recklessly to support the imposition of punitive damages or civil penalties. However, the Court finds that there are issues of material facts regarding Plaintiff's claim for punitive damages and penalties. Therefore, summary judgment of this issue is not appropriate.

### CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Partial Summary Judgment on the issue of Defendants' liability is GRANTED. The Court finds Defendants Quality Built, Dansey, and Hite liable for violations of 42 U.S.C. § 3604(f)(3)(C)(ii) and § 3604(f)(3)(C)(iii)(I)-(IV). The Court also finds Defendants Quality Built and Dansey liable for violations of 42 U.S.C. § 3604(f)(3)(C)(i). Defendant Hite's Motion for Partial Summary Judgment on the issue of punitive damages is DENIED. Defendants' Motion to Strike or to File a Sur–Reply is also DENIED.

SO ORDERED.